Robinson, J.
 

 The parties will he referred to in the reverse order from which they appear here. The defendant, under a contract with the hoard of county commissioners of Mahoning county, was engaged in reflooring the Market street viaduct in the city of Youngstown. The plaintiff’s decedent was employed by the Republic Iron
 
 &
 
 Steel Company, whose office building, from an upper floor, led onto the easterly sidewalk of the viaduct, and such decedent, in leaving such office in the usual way, met his death by being struck by an automobile which was traveling in a northerly direction over the westerly side of such viaduct while the viaduct was closed by the defendant to northerly traffic to enable it to refloor the easterly side thereof.
 

 The plaintiff charged in her petition that the defendant was in the possession and repair of the viaduct, under a contract with the board of county commissioners; that it failed to adequately protect traffic, including plaintiff’s decedent, while in the lawful use of such viaduct; failed to maintain proper and adequate guards and sufficient signals for the purpose of preventing north-bound traffic from going upon the viaduct; failed to provide and maintain traffic guards for the purpose of preventing northbound traffic from entering upon the viaduct; failed to take adequate precautions for the prevention of accident to those lawfully upon the viaduct; and charged, generally, failure to perform the covenants of the contract of the defendant with the board of
 
 *400
 
 county commissioners with respect to the precautions defendant had covenanted to take.
 

 The defendant admitted that it was present on the viaduct, engaged in the reflooring thereof, by virtue of a contract with the board of county commissioners, and, after making certain other admissions, which are not significant to the question here involved, denied generally the averments of the petition.
 

 It was the theory of the plaintiff, both in pleading her cause and in the trial thereof, that the measure of the duty of the defendant to her decedent, in addition to its common-law duty to exercise ordinary care, was the covenants of the contract between the defendant and the board of county commissioners.
 

 At the trial plaintiff offered in evidence the contract between the defendant and the board of county commissioners, and an objection thereto was sustained by the trial court. While counsel do not agree upon the interpretation of the contract, for the purposes of the question here made it may be assumed that it required of the defendant the exercise of a degree of care higher than ordinary care.
 

 By the pleadings an issue was made as to the terms of the contract, which necessarily included the question whether the defendant by its contract with the board of county commissioners had assumed to perform the duty imposed upon the board of county commissioners by Section 2408, General Code; and, for that purpose, the contract was undoubtedly competent. But in view of the charge of the court upon that subject, the error in that respect could not have been prejudicial.
 

 It was the theory of the plaintiff, however, that the
 
 *401
 
 covenants of the contract extended the duty of the defendant toward the public beyond the duty imposed upon the board of county commissioners by Section 2408, and beyond the duty imposed upon the defendant to exercise ordinary care not to injure or cause to be injured any person lawfully upon the viaduct; and the refusal of the court to admit the contract in evidence raises that question.
 

 We have examined the cases cited, and with the exception of the case of
 
 Paducah Lumber Co.
 
 v.
 
 Paducah Water Supply Co.,
 
 89 Ky., 340, 12 S. W., 554, 13 S. W., 249, 7 L. R. A., 77, 25 Am. St. Rep., 536, and the case of
 
 Gorrell
 
 v.
 
 Greensboro Water Supply Co.,
 
 124 N. C., 328, 32 S. E., 720, 46 L. R. A., 513, 70 Am. St. Rep., 598, which cases are in exact conflict with the case of
 
 Blunk
 
 v.
 
 Dennison Water Supply Co.,
 
 71 Ohio St., 250, 73 N. E., 210, 2 Ann. Cas., 852, we do not find them inconsistent with the rule applied by the trial court, and which we find to be the correct rule in Ohio; for, while in many of the cases examined the contract was admitted in evidence, in none of the cases, with the exceptions above noted, was there imposed upon the contractor a higher degree of duty than the exercise of ordinary care.
 

 So we conclude the rule to be that the duty owing toward the public by a contractor in the performance of public work cannot be increased by a contract with a public official, as such, beyond the sum of the legal duty of such public official toward the public and the legal duty of the contractor toward the public; that a public official, in making a public improvement by contract, because of the necessity of surrendering a measure of control to his contractor, has the implied
 
 *402
 
 power, where not expressed, to contract with such contractor to save him in his official capacity harmless, and may by contract provide a reasonable manner and means of accomplishing that end, and may enforce such contract. But since the duty he in his official capacity owes to the public is the duty the political subdivision, of which he is an officer, owes to the public, he can neither increase nor diminish that duty by contract. The obligation of the subdivision to respond to a member of the public for the negligence of its public official is created by statute and is subject to modification only by legislation.
 

 If it be claimed that the provisions of the contract in the instant case, imposing upon the contractor a greater duty toward the public than the sum of the duties imposed upon the board of county commissioners in their official capacity by statute and the duty imposed upon the contractor by common law, need not be referable to any existing legal duty of either, but based upon the awarding of the contract as the consideration therefor, then of course the question arises whether the power to purchase extraordinary protection for the members of the public is among the powers conferred upon boards of county commissioners; for, whatever the fact may be as to the contractor having or not having included the cost of extraordinary protection to the public in his estimate of the price he could afford to accept for the performance of the contract in the instant case, if we were to hold that the commissioners had such power, future bidders would necessarily be required to include in their estimate of the price at which they could afford to contract to do public work the
 
 *403
 
 cost of purchasing indemnity against snch extraordinary liability; and the effect of such a holding would be that the board of county commissioners have authority to expend public money to purchase extraordinary protection to persons traveling a particular highway, which of course is not justified by existing legislation.
 

 When, therefore, the plaintiff sought to charge the defendant with the duty of exercising more than ordinary care, by the introduction of the contract, the court did not err in sustaining the objection to its introduction for that purpose. The plaintiff was not prejudiced by the exclusion of the contract as proof that the defendant had assumed the performance of the duty imposed upon the board of county commissioners by Section 2408, for the reason that the court, before argument, gave plaintiff’s special requests Nos. 1, 2, 3 and 4, which, to say the least, imposed upon the defendant as a matter of law the duty to exercise ordinary care to perform every duty imposed upon the board of county commissioners by Section 2408.
 

 The Court of Appeals having based its reversal of the judgment of the court of common pleas also upon the giving, before argument, defendant’s special request No. 8, it becomes necessary to consider that request; and in so doing we not only may but are required to consider it in connection with the other special requests given before argument upon the same subject. The court gave plaintiff’s special requests Nos. 5 and 6, which read:
 

 “No. 5. The court says to you as a matter of law that by the term ‘proximate cause’ is meant that cause which in a natural and continued sequence con
 
 *404
 
 tributes to produce the result, without which said result would not have happened. The court further says to you that an accident may be caused by more than one direct and proximate cause, and in such event any party who puts in motion or sets up any one of such direct and proximate causes may be held for the total damages directly and proximately resulting from such combined causes in the event such direct and proximate cause amounted to want of ordinary care on the part of the party who put in motion or set up such direct and proximate cause and the injured party was himself in the exercise of ordinary care in the situation. And this is the rule even though a direct and proximate negligent cause put in motion or set up by one party may be earlier or more remote in point of time than a direct and proximate negligent cause put in motion or set up by another party.”
 

 “No. 6. The court says to you as a matter of law that by the term ‘proximate cause’ is meant that which in a natural and continued sequence contributes to produce the result, without which said result would not have happened. The fact that some other cause concurred with the negligence of a defendant in producing an injury, does not relieve said defendant from liability unless it is shown that such other cause would have produced the injury independently of defendant’s negligence.
 

 “Under the foregoing definition of ‘proximate cause’ it devolves upon you to determine under the issues in this case whether the collision between Baer’s car and Mr. Glass would have resulted independently of the negligence of The "Wymer-Harris Construction Company in permitting Baer to enter
 
 *405
 
 upon and pass over said Market street, northbound, at and just prior to the collision in question, if you find that said defendant, The Wymer-Harris Construction Company, was negligent in that respect.”
 

 And defendant’s request No. 8 reads:
 

 “Eighth. Before you can return a verdict for plaintiff in this case, you must find by the probabilities not only that the defendant company was guilty of one or more of the acts of negligence complained of in plaintiff’s petition, but also that such negligence was the proximate cause of Mr. Glass’s death. Proximate cause is used in law as distinguished from remote cause, and by remote cause is meant that cause which may have happened and yet no injury have occurred, notwithstanding that no injury could have occurred if it had not happened; that cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof.
 

 “If, in this case, therefore, you find that the acts and omissions of the defendant company of which plaintiff complains were merely remote causes of Mr. Glass’s death, your verdict must be for the defendant.
 

 “The Wymer-Harris Construction Company in the performance of its legal obligation of barricading and guarding its work at the time of Mr. Glass’s death, was only obliged to do, or have done, such things as a person of ordinary care and prudence usually would have done in the same situation to prevent northbound automobile traffic from crossing the Market street viaduct. If the defendant company did these things, it was not negligent in this case and your verdict must be for the defendant.
 
 *406
 
 Under no circumstances of this case can the company be held as an insurer of the fact that no automobile would travel northwardly across the viaduct at the time the work was being done.”
 

 Defendant’s request No. 8 is consistent with plaintiff’s requests Nos. 5 and 6, and elucidates the definition there given of proximate cause by distinguishing between proximate and remote cause; and the three requests as a whole constitute a correct and comprehensive definition of proximate cause. The Court of Appeals fell into error by segregating in its consideration defendant’s request No. 8 from plaintiff’s requests Nos. 5 and 6. The judgment of the Court of Appeals is reversed and that of the common pleas affirmed.
 

 Judgment of the Court of Appeals reversed and that of the common pleas affirmed.
 

 Marshall, C. J., Kinkade, Jones, Matthias, Day and Allen, JJ., concur.