Pearl E. LANEY, Administratrix of the Estate of Wilbur R. Laney, deceased, Plaintiff-Appellee,

v.

AMERICAN AIRLINES, INC., A Delaware corporation, Defendant-Appellant.

No. 14488.

United States Court of Appeals
Sixth Circuit.

Nov. 20, 1961.

Robert E. Rutt, Detroit, Mich. (Ward, Plunkett & Cooney, Detroit, Mich., on the brief), for appellant.

Thomas L. Conklin, of Conklin & Maloney, Detroit, Mich. (Mack & Kelley, Alpena, Mich., on the brief), for appellee.

Before MILLER, Chief Judge, and MAGRUDER and WEICK, Circuit Judges.

PER CURIAM.

Decedent, Wilbur R. Laney, who was 91 years of age, fell down an escalator at the Detroit Metropolitan Airport and received injuries which resulted in his death. His widow, as administratrix of his estate, brought an action in the District Court against American Airlines, Inc. to recover damages for the wrongful death of her husband, claiming Airlines was negligent in failing to furnish aid and assistance to him while he was at the airport. The case was tried before a jury resulting in a verdict in favor of the plaintiff in the amount of $7,500.

The principal errors relied upon for reversal relate to instructions of the Trial Judge to the jury to the effect that defendant was negligent in failing to keep proper records to indicate to its ticket agent at the Metropolitan Airport that aid and assistance was to be furnished to the Laneys.

Laney and his wife, who was 72 years old, lived in Alpena, Michigan. One of their sons, Richard Laney, resided in Phoenix, Arizona and had invited them to spend the winter with him. On January 17, 1959 Richard purchased and paid for two tickets for his parents at Airlines' ticket office in Phoenix on Flight 621 leaving Detroit on January 22nd at 12:20 a. m. Richard advised the ticket agent that his parents were elderly and had never flown before; that his father was 91 years old and would need assistance in getting on and off the plane and around the airport. The agent told him that this assistance would be furnished. Code messages were sent from Phoenix to Airlines' downtown office in Detroit advising of the purchase and payment of the tickets and that the Laneys were "first riders—elderly" which conveyed information that they would need assistance.

On January 21st Mrs. Laney called Airlines in Detroit on the telephone from the home of another son at Flint and cancelled their reservations for the flight scheduled for January 22nd because of the icy conditions of the Michigan roads which made driving by automobile to the airport hazardous.

The parties are in disagreement as to what happened thereafter.

Airlines' records indicate that reservations were made for the same flight on the 23rd and that a new card was made up and filed for this flight. A flight manifest was prepared for this flight on which the names of the Laneys appeared and were circled in red which meant that they did not show up. The manifest indicated that the Laneys were first riders, but did not reveal that they were elderly. When the Laneys did not appear on the 23rd their reservations were marked cancelled and the cards were placed in Airlines' back files. The records also indicate that another reservation was made on the 23rd for the same flight on the 24th at 12:20 a. m. It was on the 23rd, close to midnight, that the accident occurred.

Mrs. Laney's version was that she called Airlines on the telephone on the 22nd and that a girl advised her that all of Airlines planes were grounded because of weather conditions; that the same girl called her on the 23rd and told her she could come to the airport that day and leave on the flight on the 24th at 12:20 a. m. Airlines records for the 22nd

and 23rd did not show that any outgoing flights from Metropolitan Airport were cancelled on these dates.

The Laneys were driven in an automobile by another son from Flint to the airport on the 23rd in the afternoon. The car was parked in the airport parking lot and they walked to the airport building. Mr. Laney used a cane and was assisted by his son. They went to the second floor by escalator to the ticket counter where Mrs. Laney asked Mr. Campau the ticket agent, for the tickets for herself and husband, which her son had paid for. He called the downtown office on the telephone and learned that the tickets had been paid for and wrote them up and delivered them to Mrs. Laney. He instructed her to return at 11:45 p. m. Mrs. Laney testified that she related to Campau that her son had made arrangements for assistance to the plane.

Mrs. Laney testified that she and her husband returned to the ticket desk at 11:45 p. m.; that her son and his wife had left for home on account of the bad weather; that Mr. Campau told her to take the escalator and go out at gate 4. She said that she and her husband waited at the escalator for several minutes expecting assistance to come and when no assistance arrived proceeded down the escalator.

Mr. Campau testified that he had received no instructions from the Detroit office relative to providing assistance to the Laneys. He was uninformed about Mr. Laney's age and did not remember ever seeing him and had no conversation with him. He did not recall having seen Mrs. Laney at 11:45 p. m. although he admitted it was possible for him to have seen her and instructed her to use the escalator to get to gate 4.

It was the contention of Airlines that the information concerning the Laneys being elderly and first riders was no longer available to Detroit reservations and to ticket agent Campau since it had been back filed or placed in dead files when the Laneys failed to keep their reservations for the 23rd and that the only

record kept was the Prepaid Ticket Authority Book showing that the transportation had been paid for in advance. The District Judge charged the jury that the flight of the 24th was, as a matter of law, a continuation of the flight of the 22nd.

The reservations of the Laneys for the flight on the 22nd concerning which arrangements had been made for aid and assistance to them had admittedly been cancelled. The parties were in disagreement about what took place thereafter. Airlines' records did not agree with the testimony of Mrs. Laney. Under the circumstances, we think that reasonable minds might have reached different conclusions on the issues whether the flight on the 24th was a continuation of the flight on the 22nd and whether the defendant was negligent. Both of these factual issues should have been submitted to the jury for determination under proper instructions. We think the District Court erred in determining these two issues as a matter of law. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed. 2d 953; Sandri v. Byram, 30 F.2d 784 (CA6); McKinney v. Yelavich, 352 Mich. 687, 90 N.W.2d 883.

Airlines next complains about the conduct of the Trial Judge in inferring to the jury that it had corrected its records for purposes of trial; in inferring that Airlines had failed to produce material witnesses; in telling the jury there was no evidence that Mrs. Laney was not telling the truth; in inferring that defendant had produced a "phoney" stamped envelope as an exhibit; in stating in the presence of the jury that the attorney for Airlines was confusing everyone and wasting time; in stating that Airlines had "slipped up" in handling plaintiff's reservations and in making other derogatory remarks concerning Airlines during the course of the trial.

Remarks made by the court in the presence of the jury have a great tendency to influence the jury verdict. This in itself is not forbidden in the federal system. It is a question of degree. But

**726**

when the Trial Judge becomes in effect the lawyer for one of the litigants, he oversteps the bounds of judicial propriety. It is impossible for us to say that appellant was not prejudiced by the various untoward remarks of the judge in this case. If necessary we would reverse the Trial Judge on this ground alone, though we find it unnecessary to do so in the present case.

There was no error in denying the motion for a directed verdict.

Judgment reversed.