Lois Rae GIBSON, Executrix of the Estate of Glenn F. Gibson, Deceased, Plaintiff-Appellee,

v.

ERIE–LACKAWANNA RAILROAD COMPANY, Defendant-Appellant.

No. 16890.

United States Court of Appeals Sixth Circuit.

June 6, 1967.

Robert M. Weh, Cleveland, Ohio (Arter, Hadden, Sykoff & Van Duzer, Cleveland, Ohio, on the brief), for appellant.

Donald P. Traci, Cleveland, Ohio (Spangenberg, Hasenflue, Shibley & Traci, Cleveland, Ohio, on the brief), for appellee.

Before O'SULLIVAN and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

This is defendant's appeal from a judgment entered on a jury verdict in the amount of $160,800 following trial of a diversity action for wrongful death of appellee's decedent who was driving a truck which collided with defendant's freight train at a grade crossing.

The principal errors relied upon for reversal relate to the trial judge's refusal to find the decedent guilty of negligence as a matter of law, and to certain of the judge's instructions which appellant characterizes as argumentative and improperly critical of counsel. Other claims of error relate to the instructions concerning evidence admitted for a limited purpose and to those defining proximate cause. There is also presented the procedural question of whether appellant

properly preserved these alleged errors for our consideration.

■ Our review of the evidence convinces us that the question of decedent's negligence was properly submitted to the jury. Nevertheless, a new trial is ordered because we find that the judge's charge was prejudicial to defendant.

Defense counsel, in his argument, made only this reference to the courtroom presence of the children of deceased:

Mr. Weh: * * * Mr. Traci has had Mrs. Gibson's three daughters here in the courtroom during the trial of this entire case. I hope their presence here will not make your job of trying to decide this case fairly any more difficult than it is. Even Mr. Traci, I am sure, would agree, as he has already told you, that this is not a matter to be decided from the heart based upon sympathy or prejudice. It must be decided on the basis of the law and the facts, as the Court will instruct you and as you agreed to do when you took your oath, and as I am sure you will do.

In his charge to the jury, the court made this reference to that portion of defendant's argument:

Right here I have to stop to tell you something. Something was said yesterday about the propriety of these three little girls being in the courtroom. Of course, no party to a lawsuit has any right to decide who is entitled to be in a courtroom. But as I have just read to you the names of these three girls, and you understand the lawsuit is brought for their benefit by their mother, I say to you as a matter of law there is perfect propriety in their being here. And it was perfectly improper to suggest that they shouldn't be here. This is a free country. This is a public courtroom. They would have a right to be here if they were just school children looking around. But in this case their father lost his life as a result of the collision we have been talking about here for nine days, and they have a right to come to Court to see what kind of justice is handed out in a courtroom. They have a right to come to listen to the circumstances pertaining to the way in which their father lost his life.

Defense counsel's only reference to passenger trains was:

Now, this was a tragic accident. It resulted in damage to property, injury to people, and the death of Mr. Gibson. Fortunately it involved a freight train and not a passenger train. It brings home to all of us that railroad crossings are a place of danger, as any railroad engineer knows.

He knows that when his train is about to become involved in a crossing accident, even with a small vehicle, it may result in something getting under the wheels of the train and may cause a derailment of the entire train. He knows that the safety of his passengers, and his crew, are dependent upon those vehicles staying clear of the crossing when he goes over each and every railroad crossing.

The court, however, made this reference to passenger trains in his charge:

Now, a couple little things crept in here I have to talk about. We can go along and conduct a case and not a problem, not a question, not a raised eyebrow, no problems at all will arise. Then you sit up here and you sit back and you wait, and sometimes you hear arguments and you wonder what you are hearing. I was sitting up here yesterday listening to an argument, and Mr. Weh started talking about passenger trains. Passenger trains. Pretty soon I got the impression he is trying to create the impression with you that Gibson is the kind of man that derails passenger trains. Passenger trains. Did you hear anything about passenger trains in this case?

I read you, not verbatim but as well as I could grind it out in an hour here, I read you what the testimony was. Did anybody talk about passenger trains except the lawyer? Why does

he bring in passenger trains? Is it to enlighten you, or to frighten you? There is no passenger train in this case. You are not passing judgment on the fantasies that go through his imagination. You are judging this train and this track. He had no business bringing a passenger train in here. We swear you to bind yourselves to judge this case solely and only on the evidence before you.

Then we find in argument matters introduced that were never in the case, not introduced by you jurors who know you must be limited to the evidence before you, but by a lawyer who ought to know he has no business introducing any evidence before you that wasn't in the case. So I say to you, please forget all about the passenger train.

At another point, on the question of the decedent's contributory negligence, the judge charged:

Now, as I have said, from this lady's viewpoint and all those on the west side, they really had five-sixths vision, and on the other side it was one-sixth. You have to start asking yourselves questions now. You have got to say to yourself, what would a prudent man do? What would a prudent man do had he come to the crossing? Would that prudent man go over against the lights? Well, you heard the history of this man. Would a man with that history be imprudent, think you? Or would a man with that history honor flashers, what do you think? Do you think he would go to sleep at the switch? Do you think he wasn't looking out for his own interests, and that he was for some reason careless or not watching? What do you think, because you have to figure out as part of the case whether or not he went onto the crossing with the flashers against him.

On the question of defendant's negligence he charged:

And if you ultimately come to the decision where you say, well, they couldn't do this in this distance, then you must ask yourselves, well, could you not notify the people over on the crossing waiting to get over, could you not notify them a little sooner not to try because they set their tripping mechanism at 4,012 feet, and that gives their train, as I remember it, some 50 seconds to make the crossing. And if they set their tripping signal back, let's say, another thousand feet, then they give those people trying to run the gauntlet of that crossing, they give them perhaps another seven-eight-ten seconds. Would that be too much for a railroad to give up at the end of its destination? Would not a prudent man have given it up? That is your question.

and

Do you think a prudent man would have done that [behaved as defendant did], or do you think that indicates a lack of prudence? If a prudent man would have done that, you just sign the verdict for this Defendant and it is over, if a prudent man would have done it. If a prudent man would not have done that, if a prudent man would have allowed a little more time, one way or the other, either on the signal system or on the track, if a prudent man would have brought his mileage down even to 35, what would it cost and who would it hurt? It would be 10 seconds late at the next station, maybe a minute and 40 seconds late at the end of the day.

■ As this court stated in Laney v. American Airlines, Inc., 295 F.2d 723, at 725 (6 Cir. 1961):

Remarks made by the court in the presence of the jury have a great tendency to influence the jury verdict. This in itself is not forbidden in the federal system. It is a question of degree. But when the Trial Judge becomes in effect the lawyer for one of the litigants, he oversteps the bounds of judicial propriety.

We conclude here that the trial judge's remarks overstepped the bounds of permissible comment.

Although portions of the court's instructions on contributory negligence were proper, other portions, set out in the following excerpts, suggested to the jury that there could be only a single proximate cause of an occurrence and that Gibson's duty to exercise due care for his own safety ended if he went onto the crossing at a time when the flashers were stopped.

If you find that the direct and proximate cause was the speed of the railroad, and that whether Gibson had been negligent in coming against the flasher or not, if you find that his negligence was not *the* direct and proximate cause of his death, then this decedent can collect from this railroad.

\* \* \* \* \* \*

Now granted that he got out there with the flashers against him, if you should find he went out there with the flashers against him, that doesn't mean he loses all rights. That doesn't mean he loses all rights, because one of your ultimate questions here is going to be whether or not *the* direct and proximate cause of this collision was the speed of the train.

\* \* \* \* \* \*

Gibson shouldn't lose just because he is negligent, if you find he was. You must first find the cause of death. You must find what negligence, if any, became *the* direct and proximate cause of death. \* \* \*

\* \* \* \* \* \*

If you here find that Glenn Gibson went onto the crossing at the time when the flashers were stopped, however short a time you find they were stopped, then you will give no consideration whatsoever to any theory that he violated this signal by going on the crossing. If you find that that signal came on after he started his truck, then he had a perfect right to cross the entire crossing. (Emphasis supplied).

Ohio law is clear that there can be more than one proximate cause. Wymer-Harris Construction Co. v. Glass, 122 Ohio St. 398, 171 N.E. 857, 69 A.L.R. 517 (1930); 39 O.Jur.2d § 32. The instruction concerning Gibson's duty usurped the right of the jury to decide the question of his negligence, as we have said they should on this evidence.

On the remaining evidentiary question, we are confident that in a new trial, reference to evidence received for a limited purpose will be similarly limited in the court's instruction.

Rule 51 of the Federal Rules of Civil Procedure requires the trial judge to afford counsel an opportunity to object to the charge. We find that counsel's objections were made timely before the jury retired to deliberate and that the questions herein considered are properly before us.

Reversed and remanded for a new trial.