Fannin, Appellee and Cross-Appellant, *v.* Cubric, Cross-Appellee; E. P. Coady Co., Appellant.

100

(No. 838—Decided February 4, 1970.)

Messrs. Miller, Searl & Fitch, Mr. Chester P. Fitch and Mr. Lee O. Fitch, for appellee and cross-appellant Asa Fannin.

Messrs. Bannon, Howland, McCurdy & Dever, Mr. Robert E. Dever and Mr. William L. Howland, for cross-appellee Frank Cubric.

Messrs. Kimble, Schapiro, Stevens, Harcha & Young, Mr. Laurence M. Kimble and Mr. Howard H. Harcha, Jr., for appellant E. P. Coady Company.

GUERNSEY, J. On April 25, 1964, a portion of U. S. Route 52 in the eastern part of Portsmouth was under

reconstruction, with traffic being maintained through the construction area. The contract for the construction work had been let by the state of Ohio to the E. P. Coady Company, hereinafter referred to as Coady. Except for such control thereof as had not been yielded by the state of Ohio and subject to the rights of the traveling public therein, Coady was in possession and control of the newly constructed part of U. S. Route No. 52 herein involved. The contract contemplated that in the area in question Coady would construct a new four-lane divided highway, running in an easterly and westerly direction, with an overpass, including bridge, constructed to span a railroad and street intersecting the highway. In order for the overpass to achieve sufficient elevation for this purpose the highway ascended from normal grade elevation to a crest near the center of the bridge and thence descended to normal grade elevation. By reason of this crest, visibility from one end of the overpass to the other was necessarily limited. On the day in question all four lanes of the new highway west of the overpass had been completed sufficiently to be open to traffic to a point near the overpass. There eastbound traffic was detoured from the southerly two lanes of the highway to the south lane of the northerly two lanes of the highway, thence across the overpass to a point about 1,400 feet east of the crest thereof where such traffic continued easterly in both of the northerly two lanes of the new highway, the southerly two lanes in that area not being open for use. This detour was necessitated by the fact that about 400 feet of the floor of the south two lanes of the bridge had not been completed and could not be opened to traffic. On the other hand westbound traffic traveled to the point about 1,400 feet east of the crest of the overpass on what had been the original U. S. No. 52, located roughly parallel to and north of the new four-lane highway. At that point westbound traffic was directed up a ramp onto the northernmost lane of the new four-lane highway. No barrels, painted lines or other barriers existed after such traffic reached that northernmost lane to prevent it from also using the south lane of the two north lanes of the four-

lane highway. On the day in question, during daylight hours, defendant Cubric, a stranger to the area, believing, as he testified, that all four lanes of the new highway were open to traffic, while traveling west drove onto this south lane to pass another car and, upon reaching the crest of the overpass, collided headon with plaintiff, Fannin, who was properly in that lane traveling east, the collision causing the injuries of which Fannin now complains.

The evidence is in dispute as to the existence east of the bridge of signs for the purpose of giving warning to westbound traffic that two way traffic was being maintained on the northerly two lanes of the overpass or that westbound traffic was not permitted to use any lane except the northernmost lane. In this respect the evidence was such that a jury could properly find that adequate signs for this purpose were not maintained. The evidence is also in dispute as to whether defendant Cubric, had he looked before he reached the new highway, would have seen eastbound traffic using the lane in which the collision occurred, or would have observed any condition existing in the southerly two lanes of the highway on the overpass, which would have indicated to him that those lanes were not open to eastbound traffic. The evidence in this respect was such that a jury could properly have concluded that Cubric either did not look or that, if he did look, he did not see anything which should have warned him that eastbound traffic could not use the southerly two lanes of that part of the highway or that eastbound traffic as well as westbound traffic was, in fact, using the northerly two lanes of the four-lane highway at that point.

Plaintiff's original petition for damages named only Cubric as defendant. In his second amended petition plaintiff also joined the city of Portsmouth and Coady. Pursuant to the sustaining of a demurrer, the city of Portsmouth was thereafter dismissed as a party defendant. The court feeling that defendant Cubric had violated both Section 4511.29 and Section 4511.30, Revised Code, by driving left of center, the jury was instructed, without the nature thereof being defined, that Cubric was negligent. The jury

returned a general verdict in favor of Cubric and against plaintiff, Fannin, and in favor of plaintiff, Fannin, and against defendant Coady, and assessed damages in the sum of $90,000. Judgment was entered on that verdict accordingly.

Fannin thereupon filed a motion for judgment against Cubric notwithstanding the verdict in Cubric's favor, and Coady filed a motion for new trial and a motion for judgment notwithstanding the verdict. All these motions were overruled, whereupon Coady filed its appeal from all the orders overruling these motions, and Fannin filed his cross-appeal from the order overruling his motion for judgment against Cubric notwithstanding the verdict. Coady's appeal and this cross-appeal were docketed as case No. 838 in this court. Fannin likewise filed a separate notice of appeal, as distinguished from cross-appeal, also from the order overruling his motion for judgment against Cubric notwithstanding the verdict. This appeal was docketed as case No. 839 in this court. Cubric then filed, in case No. 838, a motion to dismiss him as a party to Coady's appeal and Fannin's cross-appeal. Subsequently, on motion of Fannin, this court ordered case No. 839 consolidated with case No. 838.

In summary, there is now only one case pending before this court, namely case No. 838, consisting of both Coady's appeal and Fannin's appeal. Before we proceed to determine these appeals on their respective merits, we must first dispose of Cubric's motion to be dismissed as a party appellee to each of those appeals.

Cubric's stated ground for dismissal is that the liability, if any, of defendants, Cubric and Coady, alleged and existing in this action, is joint and several, and that in such case one defendant may not complain that the other defendant was not found liable. *Price* v. *McCoy Sales & Service, Inc.*, 2 Ohio St. 2d 131; *Dodson* v. *New England Trust Co.*, 78 Ohio App. 503; *Cincinnati Traction Co.* v. *Eyrich*, 25 Ohio App. 546; and *Lindemann* v. *Eyrich*, 21 Ohio App. 314. As set forth in the cited cases, this is an established rule of law and, on the facts of this case, defend-

ant Cubric is entitled to be dismissed as a party appellee to Coady's appeal. However, by reason of the adversary relationship between Fannin and Cubric established in the trial of the case, which adversary relationship is preserved on appeal by virtue of the fact that Fannin's notice of appeal and assignments of error relate solely thereto, and which is not affected by the alleged relationship between Coady and Cubric of joint and several liability, Cubric remains a proper party appellee to Fannin's appeal. It is, therefore, the judgment of this court that Cubric's motion to dismiss the appeal be sustained as to Coady's appeal but overruled as to Fannin's appeal.

We come then to consider the four assignments of error set forth by Coady and argued in its brief, exercising our statutory prerogative to disregard those assignments which have not been argued. Section 2505.21, Revised Code. They are:

"1. The court erred in permitting extensive evidence and argument relating to the contractual obligation of the defendant, E. P. Coady Company.

"2. The court erred in excluding the testimony of expert witnesses as to the custom and usage in the trade to establish a standard of care.

"3. The court erred in permitting unqualified laymen to express opinions as to the existence of a dangerous condition.

"4 The court erred in overruling defendant, Coady's, motion for a directed verdict."

Coady's first assignment of error relates to the submission in evidence of the complete documents and reference in argument to (1) the agreement between the state of Ohio and Coady, (2) the contract and construction and material specifications, (3) a large book of plans and page 22 thereof, (4) a report of inspection, and (5) a resolution of the city of Portsmouth; Coady alleging that these documents constituted "the complete record of the negotiations and execution of the contract and all of the plans and specifications in connection therewith." Coady's argument, however, relates only to the first two of these doc-

uments, from which Coady's counsel concludes that "the major issue in the mind of the jury when they went into the jury room was what did Coady agree to do and how much was he paid for it," and "that the issue upon which this case was tried and which the court permitted over the objection of the defendant Coady was on the existence of a contractual relationship between the plaintiff and the defendant, Coady."

The agreement between Coady and the state of Ohio, including the specifications thereto, was properly admissible in evidence to show what part of the duties imposed by law upon the state of Ohio with respect to the provision and maintenance of warning signs or traffic control devices the defendant Coady had assumed to perform. *Wymer-Harris Construction Co.* v. *Glass,* 122 Ohio St. 398, 400. In obtaining the performance by Coady of such assumed duties, as well as the performance by Coady of its own common-law duties, if any, to the traveling public, the state could not pay for, and there could not be imposed upon the contractor, any higher degree of duty or care than the exercise of ordinary care, unless the contractor's common-law duties required such higher degree of care. *Wymer-Harris Construction Co. case, supra.* Such agreement being admissible in evidence for such purpose, it was proper that questions be asked with reference to the duties thus assumed and that reasonable reference be made to the contractual provisions in argument.

When such provisions exist in a contract between the state of Ohio and a highway construction contractor, a member of the traveling public is not denied his right of action against the construction contractor for its failure to exercise ordinary care in carrying out the duties assumed under the contract on the theory that no privity exists directly between the contractor and the injured person. *Wymer-Harris Construction Co. case, supra.* Compare, *Durham* v. *Warner Elevator Mfg. Co.,* 166 Ohio St. 31.

With respect to the contract documents and their provisions, we have carefully examined the entire record, in-

cluding the final summation, with particular reference to that part of the testimony and the statements of counsel in argument admitted over the objection of counsel for Coady, and find nothing therein prejudicial to the appellant Coady in the respects claimed by Coady.*

Appellant Coady's first assignment of error is without merit.

In its second assignment of error, appellant Coady complains of the refusal of the trial court to admit testimony of various alleged expert witnesses as to what the proper procedures are, and the custom and usage is, in providing signs or other traffic control devices in situations such as here existed, and testimony of such witnesses as to whether Coady had conformed to such procedures, custom and usage. The situation presented by the facts of this case did not require expert testimony in this regard, such testimony went to the ultimate issue to be determined by the jury and was properly excluded by the court from consideration thereof.

Coady's third assignment of error objects to the admission of testimony of one Bellville and one Jenkins, who were familiar with the area involved, "as to whether or not the maintenance of traffic through the construction area had been done properly and as to whether or not a dangerous condition existed."

Examination of that part of Bellville's testimony to

---

*Although it is not assigned as error and should be disregarded as such, the author of this opinion notes that the trial court instructed the jury "that if you find the E. P. Coady Company by contract with the state of Ohio agreed to maintain traffic on the highway improvement while construction was in progress, and further agreed to erect or maintain signs, markers and other traffic devices for the safe movement of traffic thereon, the said E. P. Coady Company was required to exercise ordinary care," etc. It would seem, the contract documents being very specific in these respects, that the issue of what was agreed to was for the court, and the jury should have been instructed, as a matter of law, what Coady's duties were under the contract. 17A Corpus Juris Secundum 1240, Contracts, Section 616. If the court erred in this regard, however, it would also seem that its error could not have been prejudicial to Coady, for the instruction as given would tend to relieve Coady of its duties, as specifically set forth in the contract, rather than to impose duties not required thereby.

which this assignment pertains shows that defendant did not object to or move to be stricken Bellville's testimony that "I saw the dangerous condition" that existed, and that his testimony that "this condition that existed before this accident" "certainly did" "come to your mind" "in traveling over this area" was not in itself objectionable testimony. All of Bellville's other testimony as to his complaints about the situation, or whether he thought additional warning signs should have been erected, was either stricken at the time when given or stricken while he was still testifying.

Examination of that part of Jenkins' testimony to which this assignment pertains shows that everything that could have been considered objectionable was stricken and the jury was instructed to disregard same.

Appellant Coady's third assignment of error is thus without merit.

Coady's fourth assignment of error rests on arguments which we have already disposed of adversely to Coady and on the further argument that a verdict should have been directed in Coady's favor because, notwithstanding the provisions of the contract between Coady and the state, the state retained and exercised the responsibility for placing and changing the traffic control signs and retained and exercised the right to approve of traffic plans and patterns. There are at least two difficulties with this argument. First, the evidence is not conclusive that the state of Ohio retained and exercised such responsibility or such right of approval. As long as Coady had contracted to assume certain of the state's responsibilities in this respect, it owed a duty to the traveling public, and the traveling public could rely on Coady's exercising due care to carry out the duties of the state assumed under the contract, unless and until Coady was fully released from its contractual obligation. The fact that the jury determined that Coady was negligent indicates that the evidence would support a conclusion that the provision and maintenance of signs by the state or by Coady were insufficient under the circumstances, and, consequently, that the state had not retained and exercised its full statutory responsi-

bility in such manner as to relieve Coady of all the responsibility which it had assumed under the terms of the contract. Secondly, under the allegations of the petition and the evidence in the record, Coady had, independently of the state's duties which it assumed under the contract, a common-law duty of its own to the traveling public with relation to its construction activities. There was sufficient evidence of a violation of this common-law duty to require submissions to the jury, whether or not it still had duties assumed under the contract. The trial court was not required to direct a verdict for Coady, and Coady's fourth assignment of error is without merit.

This court finding no error prejudicial to the appellant Coady in any of the particulars assigned and argued, the judgment in favor of appellee Fannin and against appellant Coady is affirmed.

In Fannin's appeal, Fannin assigns as error that the court erred (1) in submitting to the jury the issue of whether Cubric's negligence was a proximate cause of plaintiff's injuries and (2) in overruling plaintiff's motion for judgment against Cubric notwithstanding the verdict. These assignments of errors were argued together and will be disposed of together, as they involve the single issue whether the negligence of Cubric was, as a matter of law, a proximate cause of the collision resulting in Fannin's injuries.

In those instances in which reasonable minds can differ on the issue of proximate cause, the issue is properly submitted to the jury. *Glasco* v. *Mendelman,* 143 Ohio St. 649; *White* v. *Ohio Power Co.,* 171 Ohio St. 148. Conversely, if reasonable minds can not differ on the conclusion to be drawn from the evidence on the issue of proximate cause, the question of proximate cause should not be submitted to the jury. *Ornella* v. *Robertson,* 14 Ohio St. 2d 144; *Bird* v. *Hart,* 2 Ohio St. 2d 9; *Lawrence* v. *Toledo Terminal Rd. Co.,* 154 Ohio St. 335; and *Ziebro, Admx.,* v. *Cleveland,* 157 Ohio St. 489.

The term, "proximate cause," is often difficult of exact definition as applied to the facts of a particular case. Generally, where an original act is wrongful or negligent and

in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not preclude the original act from being *the* proximate cause of the injury.

In the case before us, it is clear that if the defendant Coady was negligent in regard to the provision, placement or maintenance of traffic barriers or signs or other traffic controls all the unfortunate incidents which followed, including Cubric's driving left of the center of the northerly two lanes of the four-lane highway, could logically be attributed to Coady's act of negligence as the dominant and primary cause—the proximate cause—thereof. Had Coady used due care, Cubric's subsequent act of negligence per se and the resulting collision may never have occurred. On the other hand there was evidence upon which a finder of fact may have concluded either that Coady was not negligent or that Cubric's misconduct did not occur because of Coady's negligence but occurred because of Cubric's failure to observe those things which would have indicated that he was precluded from using the south lane of the northerly two lanes of the highway. Under these circumstances reasonable minds could differ on the issue of whether Cubric's negligence was either *the* proximate cause, *a* proximate cause or was not proximate cause at all, of the collision, and the trial court properly submitted the issue of proximate cause pertaining to Cubric's negligence to the jury. Compare, *Clinger* v. *Duncan,* 166 Ohio St. 216. See, also, *Worland* v. *Rosthstein,* 141 Ohio St. 501.

We conclude, therefore, that the court did not commit any error prejudicial to the appellant Fannin as assigned and argued and that the judgment in favor of Cubric and against Fannin must be affirmed.

*Judgment affirmed.*

GRAY, P. J., and ABELE, J., concur.

GUERNSEY, J., of the Third Appellate District, sitting by designation in the Fourth Appellate District,