NEVINS et al., Appellees and Cross–Appellants,

v.

OHIO DEPARTMENT OF TRANSPORTATION
et al., Appellants and Cross–Appellees.

[Cite as *Nevins v. Ohio Dept. of Transp.* (1998), 132 Ohio App.3d 6.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 98AP–141, 98AP–180 and 98AP–281.

Decided Dec. 22, 1998.

8

*Ruppert, Bronson, Chicarelli & Smith, James D. Ruppert* and *John D. Smith;* *Waite, Schneider, Bayless & Chesley, Stanley M. Chesley* and *Terrence L. Goodman,* for appellees and cross-appellants Archie L. Nevins et al.

*Betty D. Montgomery,* Attorney General, *Susan M. Sullivan* and *Eric A. Walker,* Assistant Attorneys General, for appellant and cross-appellee Ohio Department of Transportation.

*Reminger & Reminger Co., L.P.A., Douglas P. Holthus, Mark E. Defossez* and *Clifford C. Masch,* for appellant and cross-appellee Concrete Construction Co.

---

JOHN C. YOUNG, Judge.

Plaintiffs-appellees and cross-appellants, Archie L. Nevins, Betsy Nevins, and the estates of decedents Janice, Jonathan, and Anna Nevins ("Nevins"), in addition to defendants-appellants and cross-appellees, Ohio Department of Transportation ("ODOT"), and Concrete Construction Company ("Concrete"), now appeal the judgments in two companion cases entered and filed on February 10, 1998 (case No. 95–07865–PR) and February 17, 1998 (case No. 94–14043).

This cause arose from an automobile accident that occurred on December 14, 1992 at the interchange of Interstate 70 ("I–70") west and Interstate 675 ("I–675") south. Archie Nevins was driving a van west on I–70, carrying as passengers his wife Janice Nevins, his mother Anna Nevins, and his two children Jonathan and Betsy. It was dark and Archie Nevins, suddenly realizing that he was about to pass his exit, turned into the "gore" median, an area dividing I–70 from the exit to I–675. The Nevinses' van struck a six-inch concrete median divider at a speed of approximately sixty-five miles per hour. The van traversed the exit ramp, slid down an embankment and into a pond adjacent to the interchange. Janice, Anna, and Jonathan drowned as a result of the accident.

The Nevinses filed complaints against both ODOT and Concrete, the general contractor hired to complete modifications to the interchange, including the gore modification project. The Nevinses alleged negligence in the maintenance of the interchange at the time of the accident. Specifically, the Nevinses alleged that the gore was improperly marked as it lacked either signs or reflective markings. In addition, the Nevinses alleged that the interchange was improperly illuminated. The Nevinses' claims against ODOT were filed in the Court of Claims under case number 94–14043. The claims against Concrete were originally filed in the Franklin County Court of Common Pleas, but were later removed to the Court of Claims, as case number 95–07865–PR, based upon Concrete's third-party claim against ODOT for indemnification. As well, ODOT filed a third-party indemnification claim against Concrete. Originally, both ODOT and Concrete filed coun-

terclaims for negligence against Archie Nevins. However, Concrete later dismissed its counterclaim.

The two cases were tried together between April 21 and April 30, 1997, with the case against Concrete being tried to a jury at the request of the parties, and the case against ODOT tried to a judge pursuant to R.C. 2743.11. The jury found Concrete liable to the Nevinses, and awarded damages in the amount of $1,654,-417.62. In the companion case, the trial court found ODOT liable, and awarded the Nevinses $1,570,000 in damages against ODOT. This award was adjusted to reflect an offset due to the contributory negligence of Archie Nevins. Final judgments were entered in the two cases, and these consolidated appeals followed.

The Nevinses now assert the following cross-assignments of error regarding the judgment in the case against ODOT:

"I. The trial court erred as a matter of law when it failed to enter a final judgment entry awarding total damages to the plaintiffs in the amount of $3,224,417.62 against ODOT, and instead, apportioned those total damages between the defendants, Ohio Department of Transportation and Concrete Construction Co., Inc.

"II. The trial court erred as a matter of law in failing to specify the separate amounts of survivorship damages, compensatory damages for wrongful death, funeral and burial expenses, and medical bills in its judgment entry in favor of plaintiffs and against ODOT.

"III. The trial court erred as a matter of law when it failed to award prejudgment interest pursuant to Ohio Rev. Code 2743.18."

The Nevinses further assert the following cross-assignments of error regarding the judgment in their case against Concrete:

"[IV]. The trial court erred in overruling plaintiffs' motion for new trial on damages where the jury was obviously misled and awarded only partial damages.

"[V]. The trial court erred in failing to instruct the jury as to concurrent but independent negligence.

"[VI]. The trial court erred as a matter of law in failing to instruct the jury regarding the decedents' survival claims.

"[VII]. The trial court erred as a matter of law when it refused to instruct the jury that defendant, Concrete Construction Co., Inc., had withdrawn its claim of negligence against Archie Nevins.

"[VIII]. The jury verdict is against the manifest weight of the evidence."

ODOT asserts the following assignments of error:

"Assignment of Error No. 1

"The Trial Court Erred in Failing to Deduct Collateral Sources Pursuant to R.C. 2743.02(D).

"Assignment of Error No. 2

"The Trial Court Erred in Holding That ODOT Was Negligent Per Se for Failing to Install a Gore Exit Sign.

"Assignment of Error No. 3

"The Trial Court Erred in Ruling That ODOT Was Negligent For Not Installing Full Pattern Pavement Markings Before the Accident.

"Assignment of Error No. 4

"The Trial Court Erred in Finding That ODOT's Alleged Acts of Negligence Proximately Caused the Accident and the Deaths of the Nevins Family."

Concrete asserts the following assignment of error:

"The trial court erred in failing to order that ODOT was required to fully indemnify Concrete Construction Company."

Initially, we note that a reviewing court is not to substitute its judgment for that of the trial court, but may reverse only where it finds an abuse of discretion. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218–219, 5 OBR 481, 482, 450 N.E.2d 1140, 1141–1142.

Actions in the Court of Claims against the state cannot be tried to a jury. R.C. 2743.11. However, those cases against a nonstate party may be tried to a jury if requested. *Id.* The trial judge has discretion to try cases separately, pursuant to Civ.R. 14(A). This court has held that given the inherent nature of the Court of Claims, the possibility that independent or inconsistent verdicts may be rendered in the same case is quite real. *Cincinnati Ins. Co. v. Keneco Distributors, Inc.* (Nov. 13, 1997), Franklin App. No. 97API04–459, unreported, 1997 WL 710604. See, also, *Moritz v. Troop* (1975), 44 Ohio St.2d 90, 73 O.O.2d 349, 338 N.E.2d 526. The cases against ODOT and Concrete were not consolidated, but they were heard together in the Court of Claims. The Concrete action was tried to a jury, while the ODOT action was not. See R.C. 2743.11, 2743.02(E); *Torpey v. State* (1978), 54 Ohio St.2d 398, 8 O.O.3d 403, 377 N.E.2d 763.

The following are cross-assignments of error as referenced in the Nevinses' original brief.

In their first assignment of error, the Nevinses argue that the trial court erred in not entering judgment against ODOT in the amount of $3,224,417.62, based

upon the total of the two awards in favor of the Nevinses. In his decision, the trial judge held that, in the instant separate actions, "this court rendered a judgment against ODOT in the amount of $1,570,000. In the [Concrete] case, a jury rendered a judgment against Concrete in the amount of [$1,654,417.62]. The court finds that the amount of these [two separate] judgments are directly related to the proportion of negligence that each party exhibited."

As has been mentioned above, the nature of the proceedings in the Court of Claims makes it impossible for the trial court to make a single determination of damages in cases involving a jury trial for a nonstate party and a bench trial for the state. However, in the instant matter, while the damages against the two defendants individually cannot be greater than those awarded against them in their respective trials, the trial court makes it clear that the separate awards do, while remaining separate, combine to make a total award to the Nevinses in the amount of $3,224,417.62. Indeed, the Nevinses, in their motion to the trial court dated January 8, 1998, concede that the awards are proportionate as against the parties and do combine for the total they seek.

Therefore, we find that the trial court did not err in not entering final judgment for the combined award against ODOT, and the Nevinses' first cross-assignment of error is overruled.

Regarding the Nevinses' second cross-assignment of error, this court finds that pursuant to R.C. 2315.19(B), the court in a nonjury action shall return a general verdict specifying the plaintiff's total compensatory damage. That verdict should also set forth those portions of the damages that represent economic and noneconomic damage, and should also include burial expenses and survival claims damages. R.C. 2323.54. See, also, *Atkinson v. Archer* (Nov. 29, 1994), Franklin App. No 94APE03–416, unreported, 1994 WL 672875.

The record indicates that the trial judge, while determining total proportionate damages against ODOT, did not separately state the amounts of individual compensatory damages, funeral and burial expenses, and survival claims. In this regard, the Nevinses' second assignment of error is sustained, and this cause is remanded to the trial court for a finding on damages in accordance with this opinion.

The Nevinses' third cross-assignment of error regarding prejudgment interest is not well taken. While R.C. 2743.18(A) does permit prejudgment interest to be allowed in a Court of Claims action where judgment is rendered against the state, such interest is permitted only in the context of contractual disputes as defined by R.C. 1343.03(A). See R.C. 1343.03(D).

■ The Nevinses' action sounded in tort and not in contract. Therefore, prejudgment interest is not provided for against ODOT under R.C. 2743.18. The Ohio Supreme Court has held that "in determining whether to award prejudgment interest pursuant to R.C. 2743.18(A) and 1343.03(A), a court need only ask one question: Has the aggrieved party been fully compensated?" *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 116, 652 N.E.2d 687, 691. In the instant matter, both the trial court and the jury awarded the Nevinses compensatory damages. Therefore, the Nevinses have been fully compensated for their damages, and prejudgment interest pursuant to R.C. 2743.18(A) is not applicable.

Further, this court has held that a combined reading of the language of R.C. 2743.18(A) with that of R.C. 1343.03 does not support a finding in favor of an award for prejudgment interest in a negligence action such as in the instant matter. *Moore v. Univ. of Cincinnati Hosp.* (1990), 67 Ohio App.3d 152, 586 N.E.2d 213. Therefore, the Nevinses' third cross-assignment of error is overruled.

The following assignments of error are contained in the Nevinses' appeal in the Concrete case and will be numbered consecutively with the assignments in the original brief.

■ The Nevinses assert in their fourth cross-assignment of error that the jury was misled by the court and as a result mistakenly awarded only partial damages based upon Concrete's proportionate share of the total damages. The determination of whether the granting of a motion for a new trial is warranted under the circumstances is within the sound discretion of the trial court. *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 690, 591 N.E.2d 762, 769; *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 666 N.E.2d 257. As has been stated above, the nature of the Court of Claims renders it impossible for a jury to determine damages against the state. R.C. 2743.11. Therefore, the case against Concrete could not be argued to a jury with the state as a party. R.C. 2743.02(E). Because of the statutory provisions governing actions brought in or removed to the Court of Claims, such a concurrent, bifurcated trial was a necessity. As a result, the jury in the Concrete action could only determine the liability of Concrete and could not render a verdict as to ODOT.

■ This court has noted, in *Cincinnati Ins., supra,* that the possibility of inconsistent verdicts where state actions and nonstate actions are tried concurrently to a judge in one case and a jury in another are a natural consequence of the inherent nature of the Court of Claims. *Id.* In the instant matter, the record reflects that the jury in the Concrete case was instructed that, because of the unique nature of the cases, it was being asked to determine liability and

damages only as to Concrete. This court has found that a trial court does not abuse its discretion when causes such as the instant case are tried separately. *Cincinnati Ins., supra.*

The record reflects that the jury awarded damages against Concrete as it was instructed to do by the trial court, and pursuant to the provisions of R.C. 2743.01 *et seq.*, governing such actions. We find that the trial court did not err in denying the Nevinses' motion for a new trial, and the Nevinses' fourth cross-assignment of error is overruled.

This court finds that the trial court did not err in refusing to instruct the jury as to concurrent but independent liability, as argued by the Nevins in their fifth cross-assignment of error. The record reflects that the trial court informed the jury throughout the trial that both ODOT and Concrete were defendants, but that the jury was to determine liability only as to Concrete. See R.C. 2743.11. Concrete asserts that Nevinses waived their right to appeal the issue of jury instruction by failing to raise it at the trial level. We shall, in any event, review these issues in the interests of justice.

The Nevinses assert that it was plain error for the trial court not to instruct the jury to determine the liability and damages of both ODOT and Concrete. Application of the plain error doctrine permits correction of an error when that error is clearly apparent on the face of the record and the error was prejudicial to the party asserting the error. *Atkinson, supra.* As has been stated, the trial court could not have the liability of the state determined by a jury. R.C. 2743.11. Therefore, there is no error on the face of the record regarding the instruction to the jury to determine the liability of only Concrete. Also, the record reflects that the Nevinses did receive separate verdicts for damages against both ODOT and Concrete in the two cases and, therefore, there was no prejudice to the Nevinses in this regard.

In addition, Civ.R. 51(A) provides, in part, "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict." The record does not reflect that the Nevins made such objection to the asserted failure to give the jury instructions here requested. There being no error on the face of the record and no apparent prejudice to the Nevinses, coupled with the Nevinses' failure to object to the lack of instruction concerning concurrent negligence, the Nevinses' fifth cross-assignment of error is overruled.

In their sixth cross-assignment of error, the Nevinses assert that the trial court erred in failing to give a proper instruction to the jury as to the survival claims brought by the estates of decedents Janice, Anna, and Jonathan Nevins, and that the jury misunderstood the instructions it was given. The Nevinses base their

argument on the assertion that the jury's award of survival claims was illogical and was lower than the award sought by the estates of the decedents.

The law of Ohio provides that it is the jury, as trier of fact, that shall determine the compensation and the damages to be awarded in a case. *Preston v. Rappold* (1961), 172 Ohio St. 524, 528, 18 O.O.2d 62, 64, 178 N.E.2d 787, 790. The assessment of damages is a matter within the sole province of the jury. *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 25 OBR 115, 495 N.E.2d 462. A jury verdict on damages supported by some competent, credible evidence will not be reversed on appeal. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

This court finds from a review of the record, that the trial judge did correctly instruct the jury on the survival claims, and that upon making its determination, the jury awarded damages on the survival claims in addition to other damages awarded to the decedents' estates, and awarded only compensatory damages to Archie and Betsy Nevins. From the record, this court concludes that the trial court's instructions regarding the decedents' causes of action for injuries to person or property pursuant to the survival of claims statute, R.C. 2305.21, were properly given, and that the jury rendered a verdict for survival claims for decedents. The mere fact that the jury returned a verdict for survival damages that was lower than those sought is not in itself indicative that the jury misunderstood its duty. *Fantozzi v. Sandusky Cement Prod. Co.* (1992), 64 Ohio St.3d 601, 612, 597 N.E.2d 474, 482–483; *Millard v. CSX Transp., Inc.* (Feb. 10, 1998), Franklin App. No. 97APE05–717, unreported, 1998 WL 63546.

The evidence suggests that survival instructions were given, and that the jury understood the instructions and made its determinations accordingly. Therefore, we do not find that the trial court erred in its survival claim instructions. Accordingly, the Nevinses' sixth cross-assignment of error is overruled.

In their seventh cross-assignment of error, the Nevinses assert that the trial court erred in failing to instruct the jury regarding Concrete's withdrawal of its negligence counterclaim against Archie Nevins. In *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 44 O.O.2d 18, 238 N.E.2d 563, the Ohio Supreme Court set forth the following three factors for determining whether a trial court's charge on the issue of contributory negligence constitutes prejudicial error: (1) was contributory negligence properly in issue at the trial, (2) was the trial court's instruction on that issue so confusing, ambiguous and misleading to the jury to require reversal, and (3) did the trial court's instruction impose upon the party a greater burden of proof concerning contributory negligence than is required by law. *Id.* at 39, 44 O.O.2d at 22–23, 238 N.E.2d at 569–570.

This court finds that, while the issue of contributory negligence was properly in issue at trial, the trial court's instruction was not confusing, ambiguous and misleading, and the instruction did not place a greater burden of proof on the Nevinses than that required by law. As a matter of fact, the court's instructions placed no burden of proof on the Nevinses regarding contributory negligence because the jury was not asked to consider the negligence of Archie Nevins in making its decision.

The only instruction given to the jury was for it to consider whether or not Concrete was negligent, and whether or not Concrete's actions were the proximate cause of the accident. The jury found that Concrete's negligence was the proximate cause of the injuries suffered, and awarded damages to the Nevinses accordingly.

There is no evidence in the record that shows that the failure of the court to give a specific instruction as to Concrete's withdrawal of its counterclaim was prejudicial to the Nevinses, affected a substantial right of the Nevinses, or that the jury even considered the negligence of Archie Nevins in making its determination. Any such instructional error is therefore harmless. Civ.R. 61. Accordingly, the Nevinses' seventh cross-assignment of error is overruled.

The Nevinses contend, in their eighth cross-assignment of error, that the jury verdict was against the manifest weight of the evidence in that the damage awards were inadequate. As has been stated above, the fact that the jury's award of damages is lower than that desired or sought is not in itself indicative that the jury misconstrued the evidence. *Fantozzi, supra.*

When the claim is that the jury verdict is against the manifest weight of the evidence, a reviewing court must examine the entire record to determine if the verdict is supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. An appellate court will not overturn a verdict supported by competent, credible evidence. *Seasons Coal,* 10 Ohio St.3d at 80, 10 OBR at 410–411, 461 N.E.2d at 1276–1277. Without evidence in the record reflecting that the jury was wrongfully influenced or that the award was manifestly excessive or inadequate, a reviewing court may not interfere with a jury's verdict on damages. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 655, 635 N.E.2d 331, 345–346.

When the award to the injured party is so inadequate as to deny the party justice, the trial court should grant a new trial. *Miller v. Irvin* (1988), 49 Ohio App.3d 96, 98, 550 N.E.2d 501, 503–504. Upon review, the asserted inadequate award must shock the reasonable sensibilities in order to be determined against the manifest weight of the evidence. *Bailey v. Allberry* (1993), 88 Ohio App.3d 432, 624 N.E.2d 279.

In the instant matter, there is no evidence that the jury award against Concrete was unreasonable. A review of the record reveals that the amount awarded against Concrete was equal to, if not greater than, the verdict against ODOT. Further, with regard to the Nevinses' claim that the jury determination as to funeral and burial expenses was unreasonably low, this court finds that the jury, as trier of fact, may review the evidence available and make the award it deems reasonable and just under the circumstances. *Preston, supra.* The jury's award does not shock the senses, and the award is not manifestly inadequate. There being no evidence that the jury's verdict is against the manifest weight of the evidence, the Nevinses' eighth cross-assignment of error is overruled.

In its first assignment of error, ODOT argues that the trial court erred in failing to deduct collateral recovery by the Nevinses against Concrete, pursuant to R.C. 2743.02(D). We disagree.

R.C. 2743.02(D) provides in part that "[r]ecoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant." Black's Law Dictionary (6 Ed.1991) 179, defines the term "collateral" to mean additional, supplementary, complementary or accompanying as a coordinate. The Ohio Supreme Court has held that a collateral benefit is deductible as a setoff only to the extent that the loss that it collaterally compensates is included in the award. *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 652 N.E.2d 952. A deductible benefit must be matched to the award for which setoff is sought. *Van Der Veer v. Ohio Dept. of Transp.* (1996), 113 Ohio App.3d 60, 69, 680 N.E.2d 230, 235–236. See, also, *Cincinnati Ins., supra.* In other words, a collateral source benefit is one that is in excess of one hundred percent of the total damages awarded to the plaintiff.

As noted by the trial court, the damages awarded against Concrete were not supplemental to those awarded against ODOT. Rather, the damages constituted Concrete's proportionate share of the Nevinses' entire damage award. The Nevinses' damages attributable to Concrete are, therefore, not collateral to or additional to ODOT's share, but are part of the primary damages awarded to the Nevins. The damages awarded against Concrete make up their share of the one hundred percent total damages awarded to the Nevinses and are not a collateral source under R.C. 2743.02(D). Therefore, the trial court did not err in refusing to set off ODOT's damages against those of Concrete. ODOT's first assignment of error is overruled.

ODOT argues in its second assignment of error that the trial court erred in finding that it was negligent *per se* for failing to install a gore exit sign marking the exit from I–70 west to I–675 south, and in its fourth assignment of

error ODOT contends that Archie Nevins's actions were the intervening, superseding proximate cause of the accident. In substance, ODOT asserts that the court's decision was against the manifest weight of the evidence. A reviewing court will not reverse a trial court's decision where there is sufficient evidence upon which the court could reasonably conclude that all the elements of the claim have been proven. *State v. Conley* (Dec. 16, 1993), Franklin App. No. 93AP–387, unreported, 1993 WL 524917.

"Sufficiency of the evidence" is a term of art meaning that legal standard applied to determine whether the evidence is legally sufficient to support a verdict as a matter of law. Although a verdict may be sustained by the sufficiency of the evidence, a reviewing court may conclude that the judgment is against the weight of the evidence. Weight of the evidence regards the evidence offered at trial in supporting one side of an issue rather than the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541, 546–547.

In order to establish actionable negligence, a plaintiff must show the existence of a duty, a breach of that duty, and an injury proximately caused from said breach. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469–470. The trial court determined that ODOT's failure to follow statutory standards regarding the posting of the gore exit sign rendered ODOT negligent *per se.* While a finding that a party is negligent *per se* provides proof that a defendant breached a duty to the plaintiff, there still must be shown that the breach proximately caused injury to the plaintiff.

ODOT concedes that it had a duty to maintain its highways in a reasonably safe condition. See *Knickel v. Dept. of Transp.* (1976), 49 Ohio App.2d 335, 3 O.O.3d 413, 361 N.E.2d 486. The court found that the interchange was marked as "Exit 44," thereby giving rise to a statutory duty on the part of ODOT to install a gore exit sign at the gore apex.

Section 2V–1 of the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD") provides that the major signs to be posted at exits and exit approaches are advance guide signs, exit direction signs, and gore signs. These signs are considered to be necessary to provide guidance to motorists using the highways and interchanges. See OMUTCD, Section 2V–6. In this case, the trial court found that ODOT failed to install the necessary signage, breaching its statutory duty to maintain the highway in a reasonably safe manner. Therefore, the court did not err in finding that ODOT was negligent *per se.*

The record reflects that ODOT was required to post a gore sign and did not, and that the Nevins family was injured as a result of their van striking the gore divider. The question then remains whether the evidence in the record

supports a finding that ODOT's failure to post the gore sign proximately caused the Nevinses' injury.

In *Mussivand v. David* (1989), 45 Ohio St.3d 314, 544 N.E.2d 265, the Ohio Supreme Court explained:

" * * * [T]o establish proximate cause, foreseeability must be found. In determining whether an intervening cause 'breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence.'" *Id.* at 321, 544 N.E.2d at 272.

As the trier of fact in the Nevinses' case against ODOT, the trial court made three important findings of fact: that at the time of the accident (1) no gore sign was posted at the gore apex although one was required, (2) the gore was not adequately marked by reflective channeling strips, and (3) ODOT had not restored lighting to the I–70/I–675 interchange, thereby decreasing visibility in the gore area. The trial court went on to determine that the highway and interchange were open to motorist traffic.

It can be reasonably inferred that traffic traveling at sixty-five miles per hour on an open highway may seek to exit at an interchange and is a foreseeable event in light of the circumstances. Archie Nevins was driving his van at sixty-five miles per hour on an open highway when he attempted to exit at the I–70/I–675 interchange. During this attempted exit, the van struck the gore median and slid into the pond, causing the Nevinses' injuries.

The trial court found that, coupled with the evidence of lack of interchange lighting and gore pavement markings, Archie Nevins would not have struck the concrete median but for the lack of the sign. Based upon a careful review of the record, we find that the evidence is sufficient to support the court's findings that the accident was foreseeable, ODOT was negligent and its negligence was a proximate cause of the Nevinses' injuries. Therefore, the court's determination was not against the manifest weight of the evidence, and ODOT's second assignment of error is overruled.

The evidence is further sufficient to warrant a finding that, although certain actions taken by Archie Nevins may have been negligently performed, those actions were normal incidents of the risks that ODOT created. Accordingly, the actions of Archie Nevins were not superseding causes of the injuries suffered by the Nevinses.

As the trial court noted, the lack of a gore sign and pattern markings created a situation that left Archie Nevins unwarned and unaware of the gore median

hazard. As has been stated above, the evidence in the record reflects that, not being warned, Mr. Nevins attempted to exit at the interchange unaware that the concrete divider blocked his path. His van struck the concrete median, causing the van to slide into the pond. The negligently unmarked gore created the hazard that proximately caused the Nevinses' injuries. Therefore, Mr. Nevins's acts do not supersede ODOT's own negligence as a proximate cause of the injury incurred. See *Westfield Ins. Co. v. HULS Am., Inc.* (1998), 128 Ohio App.3d 270, 714 N.E.2d 934. ODOT's fourth assignment of error is therefore overruled.

In its third assignment of error, ODOT argues that the trial court erred in ruling that ODOT was negligent for failing to install pattern pavement markings at the interchange in question.

The trial court found that the negligent lack of a gore sign, coupled with the negligent lack of pattern markings and lack of lighting, contributed to the hazard created by ODOT's negligent act that ultimately caused the injury to the Nevins family. While the evidence supports a finding that it was Concrete, not ODOT, that was the party responsible for placement of the pavement markings at the gore, the record also reflects that ODOT had a duty to protect the motoring public by ensuring that the interchange was adequately marked by those markings. Although the record reflects that Concrete had the duty to install adequate pavement markings, and that it had breached this duty, the record also reflects that ODOT failed to ensure that the markings were properly installed, breaching its duty to the public in this regard. Therefore, the trial court's decision regarding ODOT's negligence concerning pavement markings was not in error.

Further, we find that, based upon the court's finding of negligence regarding ODOT's failure to post a gore sign, if indeed the court's ruling as to ODOT's negligence concerning the pavement markings were to be considered error, it would be harmless error. Civ.R. 61. This court has held that, where the trial court premises liability on more than one negligent act, an error in holding one of the acts negligent is harmless. *Ridenour v. Ohio Dept. of Transp.* (Dec. 23, 1997), Franklin App. No. 97API05–731, unreported, 1997 WL 798296. Therefore, the trial court could have found ODOT negligent regardless of whether or not it breached a duty to place the pavement markings. The alleged error of the trial court would not affect a substantial right of ODOT, and for these reasons, ODOT's third assignment of error is overruled.

In its sole assignment of error, Concrete asserts that the trial court erred in failing to order ODOT to fully indemnify Concrete for the damages awarded against Concrete by the jury. This argument is based upon the premise that Concrete was a contractor that merely followed the specifications set out by

ODOT, and that any liability for negligence should ultimately rest with ODOT. This argument fails, however, for the reasons stated herein.

This court has held:

"[I]n order to qualify for indemnification, the party claiming the right must be merely passively negligent. Conversely, where two parties actively participate in the commission of a tort they are deemed concurrent or joint tortfeasors, and no right of indemnification exists between the two, although a right of contribution may be proper." *Mahathiraj v. Columbia Gas of Ohio, Inc.* (1992), 84 Ohio App.3d 554, 564, 617 N.E.2d 737, 744. See, also, *Reynolds v. Physicians Ins. Co. of Ohio* (1993), 68 Ohio St.3d 14, 16, 623 N.E.2d 30, 31–32.

A party is deemed to be actively negligent when the tort committed is through the tortfeasor's actual participation in the tort or his knowing acquiescence in the continuation of a dangerous situation that gives rise to the injury. *Lattea v. Akron* (1982), 9 Ohio App.3d 118, 122, 9 OBR 182, 185–186, 458 N.E.2d 868, 872–873.

Section 7A–4 of the OMUTCD provides that the provisions for public protection contained within the manual apply to both the state highway department and to contractors employed in road construction. Concrete was employed by ODOT in the interchange construction project, and, therefore, had an active duty to provide for the public protection. See, also, *Fannin v. Cubric* (1970), 21 Ohio App.2d 99, 50 O.O.2d 206, 255 N.E.2d 270.

The concrete median apparently functions as an island barrier to channel traffic going onto the interchange, keeping such traffic separate from that of I–70 proper. Section 4A–11 of the OMUTCD provides that the approach end of a traffic channelization island must be provided with a maximum degree of warning to motorists of the presence of the island. Gore pavement markings, as well as proper signage and illumination, are among the approved methods of warning outlined in section 4A–11.

The technical requirements for proper pavement markings are set forth in Section 3 of the manual. Section 3B–26 outlines the pavement markings that are to be utilized in marking an exit channel or gore. The markings consist of a solid white triangle delineated as a neutral area placed in front of the median island. The base of the triangle abuts the island and the apex extends away from and in front of the median. Diagonal markings are applied within the triangle, and the apex of the island itself is to be painted white. All markings are to be composed of reflective materials capable of being illuminated by the headlights of a vehicle on the highway. Figures P–11 and P–12, contained in Section 3 of the OMUTCD, indicate that such pavement marking configurations are to be used as a warning to the approach end of a traffic channelization island such as was

constructed at the I–70/I–675 interchange. The purpose of the markings is to warn the traveling public of the median obstruction separating the interchange from the highway.

At trial, Concrete conceded it had a duty to place pavement markings in the gore median, and failed to do so. This breach of duty was claimed in the Nevinses' complaint and was alleged as a proximate cause of the Nevinses' injuries. Concrete's failure to install the markings was presented to the jury as evidence of Concrete's negligence. Based upon the evidence presented, the jury found Concrete's negligence to be the proximate cause of the Nevinses' injuries.

The record reflects that Concrete displayed active negligence through its knowing decision not to install the required pavement markings. The trial court also found that Concrete displayed negligence in failing to install traffic control devices at the interchange. Therefore, because Concrete was found to be actively negligent and jointly liable to the Nevinses, its claim for indemnification is not well taken.

However, the Ohio Supreme Court has held that the Ohio statutes regarding joint tortfeasors, R.C. 2307.31 and 2307.32, permit a defendant, under certain circumstances, to recover as contribution from the other tortfeasor a portion of the damages paid to the plaintiff. *Fidelholtz v. Peller* (1998), 81 Ohio St.3d 197, 202, 690 N.E.2d 502, 506. Notwithstanding the fact that ODOT was found to be liable in tort to the Nevins family, Concrete is not automatically entitled to contribution from ODOT.

Although both ODOT and Concrete, in their separate actions, were found to be liable in tort to the Nevinses, the Supreme Court has held that liability for contribution is different and distinct from the liability for the jointly committed tort. *MetroHealth Med. Ctr. v. Hoffmann–La Roche, Inc.* (1997), 80 Ohio St.3d 212, 217, 685 N.E.2d 529, 533. The *Fidelholtz* court stated that the goal of the joint tortfeasor statutes was to ensure that each tortfeasor would share the burden of making the injured party whole. *Id.* at 203, 690 N.E.2d at 506–507. The right to contribution is the right to recover from another who is also liable for the proportionate share of that joint tortfeasor's liability. *Frank Lerner Assoc., Inc. v. Vassy* (1991), 74 Ohio App.3d 537, 547, 599 N.E.2d 734, 740.

Given the evidence in the record, this court concludes that Concrete is not entitled to contribution from ODOT. Concrete was found to have breached its duty to install proper pavement markings or otherwise properly mark the gore median, and the damages awarded against Concrete were determined to be for Concrete's proportionate share of the total damages suffered by the Nevinses. The award against ODOT was determined to be ODOT's proportionate share of the total. Ordering ODOT to pay contribution to Concrete would force ODOT to

pay more than its determined proportionate share of the damages. Since both parties have been found liable for their share of the damages, Concrete is not entitled to contribution from ODOT. See R.C. 2307.31(B).

The trial court did not err in finding that ODOT was not required to pay indemnification or contribution to Concrete. Concrete's assignment of error is overruled. For the foregoing reasons, the Nevinses' second cross-assignment of error is sustained, and their cross-assignments of error one, three, four, five, six, seven, and eight are overruled. ODOT's assignments of error one, two, three, and four are overruled, and Concrete's single assignment or error is overruled. The judgments of the Court of Claims are affirmed in part and reversed in part, and these causes are remanded to the Court of Claims of Ohio for disposition in accordance with this decision.

*Judgments affirmed in part,*
*reversed in part*
*and causes remanded.*

MASON, J., concurs.

PEGGY BRYANT, J., concurs in part and dissents in part.

PEGGY BRYANT, Judge, concurring in part and dissenting in part.

Being unable to agree with all of the majority opinion, I respectfully concur in part and dissent in part.

A.  Plaintiffs' Assignments of Error on Cross-Appeal in the ODOT Case

The first assignment of error in plaintiffs' cross-appeal asserts that the trial court erred in failing to consolidate the damages the jury awarded against Concrete Construction Company ("Concrete") in case No. 98AP–180 with the damages the trial court awarded against the Ohio Department of Transportation ("ODOT") in case No. 98AP–141. In support of their argument, plaintiffs insist that the jury's $1.65 million award against Concrete and the court's $1.57 million award against ODOT reflect those tortfeasors' proportionate shares of the total liability of approximately $3.22 million. Conversely, ODOT argues that because neither the trial court nor the jury specified that their respective damage awards represented the defendants' proportionate liability, the trial court erred in declaring that the judgments represent the defendants' proportionate liability. ODOT further argues under common-law principles of joint and several liability that allowing plaintiffs to recover the sum of the two awards is tantamount to double recovery for the same harm.

" ' "Concurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury." ' " *Hitch v. Ohio Dept. of Mental Health* (1996), 114 Ohio App.3d 229, 243, 683 N.E.2d 38, 47, quoting *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 584, 613 N.E.2d 1014, 1024. According to the evidence at trial, ODOT and Concrete were concurrent tortfeasors in relation to the harms plaintiffs suffered, as Concrete's and ODOT's negligence concurred in point of consequence to produce single, indivisible injuries. Indeed, plaintiffs presented evidence of and claimed the same damages against ODOT and Concrete.

While R.C. 2743.11 required plaintiffs to present their claims against ODOT to the Court of Claims, and plaintiffs elected to present their claims against Concrete to a jury, the existence of two finders of fact does not alter the concurrent nature of the negligence at issue here. At common law, " 'where damage is caused by the joint or concurrent wrongful acts of two or more persons, they may be prosecuted therefor jointly or severally.' " *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 286, 31 OBR 559, 566–567, 511 N.E.2d 373, 380–381, quoting *Transfer Co. v. Kelly* (1880), 36 Ohio St. 86, 90. In such a case, "the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm." *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph five of the syllabus. Once this burden is met, a prima facie evidentiary foundation has been established supporting joint and several judgments against the defendants. *Id.* at 197, 559 N.E.2d at 1323–1324.

" 'The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than the so-called "philosophical sense," which includes every one of the great number of events without which any happening would not have occurred.' " *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686, 653 N.E.2d 1196, 1202 (quoting Restatement of the Law 2d, Torts [1965], Section 431, Comment *a* ). While the finder of fact in each case in the trial court did not expressly determine that the negligence of either defendant was a substantial factor in producing the damages awarded, the trial court and the jury by their verdicts on proximate causation necessarily concluded that each defendant's negligence was a substantial factor in bringing about the plaintiffs' injuries. Even though the defendants thus are concurrent tortfeasors, plaintiffs are entitled to only one satisfaction for that judgment. See *Seifert v. Burroughs* (1988), 38 Ohio St.3d 108, 110, 526 N.E.2d 813, 814–815, citing Restatement of the Law 2d, Judgments (1982) 40, Section 50, Comment *d.*

Resolution of the damages issue here, however, is complicated by the nature of an action in the Court of Claims. R.C. 2743.11 provides that "[n]o claimant in the court of claims shall be entitled to have his civil action against the state determined by a trial by jury." As a result, ODOT cannot be held accountable for the damages the jury awarded to the extent they exceed the damages the Court of Claims awarded. A ruling to the contrary would allow plaintiffs to recover indirectly, through principles relating to concurrent tortfeasors, what the General Assembly directly prohibited. As a by-product of that dichotomy, the potential for inconsistent verdicts in cases involving claims against both the state and nonstate parties continues to be "an inherent characteristic * * * of the current system by which the state has waived its sovereign immunity and established the Court of Claims." *Cincinnati Ins. Co. v. Keneco Distrib., Inc.* (Nov. 13, 1997), Franklin App. No. 97API04–459, unreported, 1997 WL 710604. Nonetheless, to determine the propriety of the damages awards, it is necessary to consider whether the verdicts represent total damages, or proportionate damages awarded based on the extent to which each defendant caused the harm.

Although the trial court's February 10, 1998 decision on Concrete's posttrial request for contribution indicates that "the amount of [the respective judgments against ODOT and Concrete] are directly related to the proportion of negligence that each party exhibited," the trial court should have determined total damages suffered by the plaintiffs, and then, on motion of the defendants, apportioned the damages by determining to what degree each defendant caused the harm at issue. By failing to award total damages against ODOT, the trial court deprived plaintiffs of a judgment for the joint liability of the defendants. Accordingly, I would sustain plaintiffs' first assignment of error on cross-appeal and remand the matter to the trial court to determine the total damages plaintiffs suffered as a result of the negligence of the concurrent tortfeasors.

On remand, if ODOT or Concrete were to request that damages should be apportioned, then the court may consider that issue and rule accordingly. However, the issue of apportionment, a matter to be demonstrated by defendants, may not deprive plaintiffs of the total damage award to which they are entitled as a result of the concurrent negligence of defendants. For the foregoing reasons, I disagree with the majority opinion's disposition of a number of plaintiffs' assignments of error in both cases, as I disagree with the majority's conclusion that the trial court correctly ruled that the awards against both defendants could permissibly represent those defendants' respective shares of liability.

### B.   Plaintiffs' Case Against Concrete

Plaintiffs argue in their first cross-assignment of error in the Concrete case that the trial court erred in denying their motion for a new trial on damages.

Plaintiffs' argument on cross-appeal essentially focuses on the adequacy of the damages and is directed to Civ.R. 59(A)(4), which states:

"A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

" * * *

"(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice * * *."

A trial court's denial of a motion for new trial may be reversed on appeal only where the complaining party demonstrates the trial court abused its discretion. *Dillon v. Bundy* (1991), 72 Ohio App.3d 767, 773, 596 N.E.2d 500, 504. To support a finding of passion or prejudice under Civ.R. 59(A)(4), plaintiffs must demonstrate "that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities." *Pena v. Northeast Ohio Emergency Affiliates, Inc.* (1995), 108 Ohio App.3d 96, 104, 670 N.E.2d 268, 273. In assessing such a claim, a reviewing court should consider the amount of the verdict, whether the jury considered incompetent evidence, improper argument by counsel, or other improper conduct which can be said to have influenced the jury. *Dillon, supra.*

Plaintiffs do not allege that the jury considered incompetent evidence, improper argument, or other improper conduct by counsel. Rather, plaintiffs' entire argument with regard to the court's denial of their motion for a new trial on damages focuses on the inadequacy of the jury instructions, resulting in the jury's allegedly allocating damages between Concrete and ODOT. While the absence of instruction in that regard may suggest that the jury was confused, such an omission does not render the verdict the product of passion or prejudice. The amount of damages in this case, without more, is insufficient to demonstrate passion or prejudice. Nor is the award so overwhelmingly disproportionate as to shock reasonable. sensibilities. The mere fact that a larger amount *could* have been awarded does not necessarily show that the jury lost its way. See *Dillon,* at 774, 596 N.E.2d at 504–505; cf. *Jeanne v. Hawkes Hosp. of Mt. Carmel* (1991), 74 Ohio App.3d 246, 257, 598 N.E.2d 1174, 1181 ("The mere size of a verdict does not afford proof of passion or prejudice."). For the foregoing reasons, I would overrule plaintiffs' first cross-assignment of error in the Concrete case.

Plaintiffs' second, third, and fourth cross-assignments of error in the Concrete case are interrelated and will be addressed together.

Plaintiffs' second cross-assignment of error asserts that the trial court improperly omitted their proposed jury instruction regarding concurrent but independent negligence. Similarly, plaintiffs' third and fourth cross-assignments of error contend that the trial court did not properly instruct the jury regarding the

decedents' survival claims and erred in refusing to instruct the jury regarding Concrete's dismissal of its contributory negligence claim against Archie Nevins. In response, Concrete initially argues that plaintiffs have waived their right to appellate review of any of the instructions because plaintiffs did not object under Civ.R. 51(A) following the charge.

As to plaintiffs' second cross-assignment of error, plaintiffs submitted the following proposed jury instruction for inclusion in the court's charge to the jury:

"If a person is injured by the negligence of persons or entities who act independently, and their acts combine to proximately cause injury, each of the wrongdoers is liable to such person for the full amount of the damage. The injured person may enforce his claim in an action against only one of the wrongdoers individually. (Court of Claims case No. 95–07865–PR, Plaintiffs' Proposed Jury Instruction 15. Citing 1 Ohio Jury Instructions 7.80.)"

During the hearing on jury instructions, jury interrogatories, and verdict forms, the trial judge agreed to give plaintiffs' proposed instruction. For whatever reason, the court did not include the instruction in its charge to the jury. Instead, the court instructed the jury, as to proximate cause, as follows:

"A party who seeks to recover for an injury must prove not only that the other party was negligent, but also that such negligence was a proximate or direct cause of injury.

"Proximate cause is an act or failure to act which in the natural and continuous sequence directly produces the death or injury, and without which it would not have occurred. Cause occurs when the death or the injury is the natural and foreseeable result of the act or failure to act.

"There may be more than one proximate cause. When the negligent act or failure to act of one party continues, combines with, or joins with the negligence of another to produce the injury or damage, the negligence of each or both is a cause. It is not necessary that the negligence of each occur at the same time, nor that there be a common purpose or action."

Following the charge to the jury, the court inquired of counsel, "[a]re there any corrections or omissions other than those already stated in the record?" Plaintiffs' counsel replied, "I think we've covered them, Your Honor."

Civ. R. 51(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." The purpose of the rule is to make the trial court aware of alleged errors in the instructions when it still has an opportunity to correct the mistake or defect. *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 33, 65 O.O.2d 129, 131, 303 N.E.2d 81, 84–85.

Plaintiffs contend that *Presley* excuses their failure to timely object to the court's omission of their proposed instruction. In *Presley*, the Ohio Supreme Court created an exception to Civ.R. 51(A), holding that "[w]here the record affirmatively shows that a trial court has been fully appraised of the correct law governing a material issue in dispute, and that the complaining party has unsuccessfully requested the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to *formally* object thereto." (Emphasis *sic.*) *Presley, supra,* paragraph one of the syllabus, citing Civ.R. 51(A); see, also, *Mers v. Dispatch Printing Co.* (1988), 39 Ohio App.3d 99, 107–108, 529 N.E.2d 958, 967–969 (construing *Presley, supra*). If the party makes its position sufficiently clear to give the court an opportunity to correct a defect in the charge, then the rationale of giving the court notice of the defect is no longer served by a formal objection after the charge is given. *State v. Wolons* (1989), 44 Ohio St.3d 64, 67, 541 N.E.2d 443, 445–446, and *State v. Banks* (1992), 78 Ohio App.3d 206, 211–212, 604 N.E.2d 219, 222–224, both construing analogous Crim.R. 30(A). *Presley* applies when a party unsuccessfully argues for inclusion of a proposed jury instruction, and the charge as presented to the jury is different from or contrary to the proposed instruction. At that point the material issue is in dispute for the purposes of the *Presley* exception. Thus, Ohio appellate courts have uniformly applied *Presley* where the trial court *refused* to charge the jury as requested or charged the jury inconsistently with a proposed instruction. See, *e.g., Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 567 N.E.2d 1291; *Wolons; Banks, supra; Jenks v. W. Carrollton* (1989), 58 Ohio App.3d 33, 567 N.E.2d 1338; *Mers, supra.*

By contrast, the trial court here did not reject plaintiffs' proposed instruction or refuse to give it. Plaintiffs have cited no authority applying the *Presley* exception in a situation in which the trial court merely fails to charge the jury as requested without an implicit rejection of the proposed instruction by inclusion of a contrary or dissimilar instruction. Further, federal courts, construing analogous Fed.R.Civ.P. 51 [1] have rejected such an application. See, *e.g., United States v. Heyward–Robinson Co.* (C.A.2, 1970), 430 F.2d 1077, 1084–1085 (distinguishing *Sweeney v. United Feature Syndicate* [C.A.2, 1942], 129 F.2d 904 [cited with approval in *Presley, supra,* at 33, 65 O.O.2d at 131, 303 N.E.2d at 84–85]); *Pauling v. News Syndicate Co.* (C.A.2, 1964), 335 F.2d 659, 669–670 ("The case is not like the decisions * * * where the judge, having focussed on the point, charged the opposite of what had been requested, so that objection would have

---

1. Fed.R.Civ.P. 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The rule is "essentially identical to Civ.R. 51(A)." *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 32, 65 O.O.2d 129, 131, 303 N.E.2d 81, 84.

been a useless formality. * * * [T]he defect was solely of omission." [Citations omitted.] ).

Further, plaintiffs' proposed instruction did not call to the court's attention a deficiency in the charge, as the court had not yet made available to counsel its draft of the charge. Moreover, before the jury retired, the court specifically asked the parties whether they had any corrections or omissions in the charge as given. In response, plaintiffs' counsel stated that he had none. Accordingly, Civ.R. 51(A) prohibits plaintiffs from raising an objection to the charge in this court. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, paragraph one of the syllabus. Therefore, plaintiffs' second cross-assignment of error in the Concrete case must be overruled unless the trial court committed plain error. *Id.* at 209, 24 O.O.3d at 317, 436 N.E.2d at 1002–1003.

"In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.

Here, although plaintiffs do not contest the trial court's instruction on the issue of concurrent causation, plaintiffs insist that the omission of their proposed jury instruction "raises serious concern about the basic fairness and integrity of the judicial process in the Ohio Court of Claims." Plaintiffs argue that the omission, coupled with the court's admonition that the jury should determine liability only as to Concrete, confused the jury and resulted in the jury's apportioning the damages solely for the portion of the harm Concrete caused. In particular, plaintiffs contend that the jury's award of twenty-three percent of the funeral expenses for each decedent suggests apportionment of some kind.

The alleged apportionment cannot be said to challenge the legitimacy of the underlying judicial process. The interrogatories, which the parties reviewed at a precharge hearing, directed the jury to determine the "total amount of damages," without qualification, to the estates of Anna Nevins, Janice Nevins, and Jonathan Nevins, and "the total amount of compensatory damages," without qualification, to Betsy Nevins and Archie Nevins for emotional distress. The court inquired of counsel at least twice concerning the correctness of the jury instructions, and counsel failed to challenge the omission of the requested instruction. It is doubtful that the public's confidence in the jury system is undermined " 'by requiring parties to live with the results of errors that they invited, even if the errors go to "crucial matters." In fact, the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice.' " (Emphasis *sic.*) *Goldfuss, supra,* at 121, 679 N.E.2d at 1103 (quoting

*Montalvo v. Lapez* [1994], 77 Hawaii 282, 884 P.2d 345 [Nakayama, J., concurring in part and dissenting in part]).

For the foregoing reasons, I would overrule plaintiffs' second cross-assignment of error in the Concrete case.

Plaintiffs' third and fourth cross-assignments of error challenge the trial court's refusal (1) to clarify the definition of "survival claim," and (2) to instruct the jury regarding Concrete's withdrawal of its contributory negligence defense. Plaintiffs failed to assert a postcharge objection to either omission. If plaintiffs are not excused from making a formal objection, they have waived appellate review of the omissions under all but the plain error standard of review. Civ.R. 51(A); *Schade, supra*; see, also, *Lawson v. Sivillo* (May 15, 1980), Cuyahoga App. No. 41284, unreported (applying waiver to Civ.R. 51[B] cautionary instruction).

Plaintiffs did not waive their right to appellate review of the court's refusal to clarify its instruction on the decedents' survival claims. Counsel for plaintiffs specifically brought to the trial court's attention their concerns that the charge inadequately instructed the jury on the issue of survivorship, but the court declined to clarify the charge. Having satisfied the purpose of Civ.R. 51(A), plaintiffs were not required to formally object to the same instruction. *Presley, supra*.

Similarly, plaintiffs preserved their right to appeal the court's refusal to instruct the jury on Concrete's withdrawal of its comparative negligence claim. Regarding that instruction, plaintiffs asked the trial court to instruct the jury that Concrete had withdrawn its allegation of comparative negligence; plaintiffs were concerned that the jury would improperly consider evidence presented in relation to that issue. The court refused to include such an instruction because Concrete objected to it. Thus, plaintiffs articulated their concerns about the proposed omission, yet the court indicated that it would not act on those concerns. Moreover, whether the court should admonish the jury concerning Concrete's last-minute withdrawal of its contributory negligence defense, after both parties had presented evidence regarding the defense, was "material" and "in dispute" for the purposes of the *Presley* exception. Cf. *Steinke v. Koch Fuels, Inc.* (1992), 78 Ohio App.3d 791, 797, 605 N.E.2d 1341, 1345 (instruction regarding claim dismissed before trial "potentially confusing and legally incorrect"). Accordingly, plaintiffs properly preserved the issue for appeal, in spite of their failure to offer a postcharge objection to the court's omission. Thus, plaintiffs have not waived the errors asserted in their third and fourth cross-assignments of error.

Plaintiffs' third cross-assignment of error challenges the trial court's refusal to modify the language of its charge on survivorship damages. A court is not required to use the precise language a party proposes for a jury instruction.

*Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d at 690, 591 N.E.2d at 769. Thus, the challenged language must be reviewed within the context of the entire charge. Reversible error generally cannot be predicated upon a portion of the charge; where the charge, considered as a whole, is not prejudicial to the objecting party, no reversible error results from a misstatement or ambiguity in a portion of it. *Sech v. Rogers* (1983), 6 Ohio St.3d 462, 464, 6 OBR 515, 516–517, 453 N.E.2d 705, 707–708; *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 44 O.O.2d 18, 238 N.E.2d 563, paragraph three of the syllabus.

At the trial court's request, counsel engaged in a detailed colloquy concerning the differences between plaintiffs' survivorship claim and the wrongful death claim. The court eventually indicated that it understood that the survivorship claim addressed the pain and suffering endured by the decedents from the time of the accident to the time of their deaths. However, the survivorship instruction, as presented to counsel for review, referred to the pain and suffering and mental anguish endured by the plaintiffs generally, rather than the plaintiffs' decedents. When plaintiffs' counsel expressed their concern, the following discussion with the trial court ensued:

"MR. GOODMAN: I was reviewing the instructions that you proposed to us, I saw—I believe you gave a survivorship interrogatory, but there was not a definition of survivorship in the instructions—survival.

"THE COURT: I put in word for word from the case you gave me, word for word.

"MR. GOODMAN: But that's for the—

"THE COURT: But the factors to be considered under death benefits are there. What other language can you use? Go ahead.

"MR. SMITH: Judge, let me—the language from the *Binns* case applies to Arch and Betsy Nevins' claims.

"THE COURT: That's correct.

"MR. SMITH: The survival claim is for the decedents for pain and suffering before they died.

"THE COURT: If you look at my charge, I say on Page 12, extent of physical illness to the Plaintiffs and pain and suffering that they experience. What other claims do you have? Bring the jury in. Let's move on."

The court charged the jury on survivorship and wrongful death, as follows:

"If you find for the Plaintiffs, the first consideration is to determine what damages, if any, may have been sustained by the Plaintiffs. In making this determination, you will consider the following:

"The nature and extent of the physical and mental injuries to the Plaintiffs; any pain and suffering that they experienced, including mental anguish.

" * * *

"If you find for the Plaintiff[s], you will determine what sum of money will compensate the beneficiaries for the injury and the loss to them by reason of the wrongful death of the decedents, plural.

"In determining damages suffered by reason of the wrongful death, you may consider all factors existing at the time of the decedent's death." (The court then presented a list of factors to consider in awarding damages for wrongful death.)

R.C. 2305.21 provides that "causes of action for * * * injuries to the person * * * shall survive; and such actions may be brought notwithstanding the death of the person entitled * * * thereto." Gene Hollinger, the administrator of Janice and Jonathan Nevins's estates, and Reginald Nevins, the administrator of Anna Nevins's estate, brought the instant action, in part, on behalf of the estates of the decedents to recover for the pain and suffering Anna, Jonathan, and Janice suffered as a result of the accident allegedly caused by Concrete. Those claims represented the survivorship portion of the action. By contrast, R.C. 2125.01 affords a civil remedy that compensates others for the death of a person caused by the wrongful act, neglect, or default of a third person. Gene Hollinger and Reginald Nevins, among other plaintiffs, brought wrongful death claims on behalf of the decedents' next-of-kin.

Because plaintiffs sought to recover for both wrongful death and survivorship claims, the court had a duty to separate those claims and instruct the jury on the law as to each issue. See *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585. The court incorrectly instructed the jury that, in awarding damages for the survivorship claim, it was to consider "the nature and extent of the physical and mental injuries to the *Plaintiffs;* any pain and suffering that *they* experienced, including mental anguish." (Emphasis added.) The error is only exacerbated by the trial court's instructions to the jury panel prior to voir dire that "the plaintiffs" in this action were Archie Nevins, Betsy Nevins, and the estates of Anna Nevins, Janice Nevins, and Jonathan Nevins. The charge, considered as a whole, failed to adequately separate the basis for damages in the wrongful death claim from the basis for damages in the survivorship claim. The court's refusal to entertain counsel's concern regarding that issue was error.

The amounts of the survivorship damages themselves demonstrate sufficient prejudice to merit reversal. The primary evidence regarding the decedents' pain, suffering, and mental anguish were the video depositions of the coroners who prepared the decedents' death certificates. All three decedents suffered various

abrasions, contusions, and bruises as a result of the tumbling motion of the van during the accident. Additionally, Dr. Dirk Gregory, who performed the autopsy on Anna Nevins, concluded that Anna Nevins suffered a crushed chest with multiple rib fractures, rendering her unable to breath normally. All three decedents ultimately died of freshwater drowning, a process which renders a person unconscious within, at most, three minutes of involuntarily inhaling water.

The survivorship damages awarded for each decedent indicate that the jury was confused as to the nature of survivorship damages. The jury awarded the most damages for Jonathan Nevins, the youngest decedent, even though Anna Nevins clearly sustained the most serious, and arguably the most painful, injuries as a result of the accident. Similarly, the jury awarded far less damages for Janice Nevins than for Anna or Jonathan. The awards are more in line with the amount a jury would award the surviving family members for wrongful death. The tremendous diversity in the survivorship awards is not supported by, and is at odds with, the only evidence adduced on the subject of pain, suffering, and mental anguish suffered by the decedents, thus reflecting the prejudice plaintiffs sustained by the court's incorrect instruction on survivorship damages. Accordingly, I would sustain plaintiffs' third cross-assignment of error in the Concrete case.

Under plaintiffs' fourth cross-assignment of error, the requested instruction regarding Concrete's withdrawal of its comparative negligence defense was essentially a request for a cautionary instruction. Plaintiffs sought by the instruction to prevent the jury from considering evidence that ODOT's experts presented on Archie Nevinses' comparative negligence. The decision to give a cautionary instruction under Civ.R. 51(B) rests within the sound discretion of the trial court and will not be disturbed by a reviewing court absent an abuse of discretion. *Lambert v. Shearer* (1992), 84 Ohio App.3d 266, 275, 616 N.E.2d 965, 970–971; *Berlinger v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 830, 840, 589 N.E.2d 1378, 1384–1385. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

The trial court allowed ODOT to elicit testimony from several witnesses regarding Archie Nevins's negligence. The jury heard Highway Patrol Officer Kenneth Garloch testify that Archie Nevins failed to brake as his vehicle approached the lake. ODOT utilized a similar technique with Highway Patrol Officer Christopher Dickens, who also used photographs of the crash site to demonstrate to the jury that Archie Nevins failed to brake or steer before the van hit the lake. Similarly, Trooper Greg Crisp testified that on the night of the accident, Archie Nevins told him that Nevins allowed the van to coast into the

lake without braking or steering. Further, ODOT's collision analysis and reconstruction expert, Walter Kennedy, testified that Archie Nevins's lane change immediately before the crash was not a gradual lane change, but a "lane swerve maneuver." Kennedy's ultimate conclusion, that such failure was "careless," was stricken from the record.

Even if the court's refusal to caution the jury not to consider the foregoing evidence constituted an abuse of discretion, plaintiffs have not demonstrated prejudice. While plaintiffs contend that the absence of such an admonition "clearly contributed to the jury's confusion and inexplicable verdict," plaintiffs have not tied the court's refusal to admonish the jury to any evidence or action reflecting confusion. Indeed, plaintiffs have not even attempted to connect the reduced burial expenses award to the court's refusal to give the requested instruction.

Moreover, the court instructed the jury to apply the law as provided in the charge, and not their conception of what the law should be. Concrete, itself, informed the jury several times during its closing argument that it did not consider the accident to be Mr. Nevins's fault ("This was an accident. It wasn't our fault, and it wasn't—obviously wasn't Mr. Nevins' fault." "And don't get me wrong, I'm not saying [Mr. Nevins] should have hit the brakes. * * * I don't think [his actions were] unreasonable.").

Plaintiffs nonetheless suggest that *Snyder, supra,* and *McCullough v. Spitzer Motor Ctr., Inc.* (1996), 108 Ohio App.3d 530, 671 N.E.2d 306, require reversal. In *Snyder,* the Ohio Supreme Court indicated that where evidence of contributory negligence is adduced at trial, the trial court commits reversible error in failing to instruct the jury on that issue, even if the issue was not raised in the pleadings. *Snyder,* however, addressed the court's duty to provide an instruction on the merits, where plaintiffs' assigned error involves a cautionary instruction lying within the sound discretion of the trial court. Moreover, *Snyder* ultimately held that because the record failed to demonstrate substantial prejudice resulting from the charge as given, the trial court had not committed reversible error. Plaintiffs' argument suffers from a similar deficiency.

Nor is *McCullough* dispositive. In *McCullough,* the Court of Appeals for Cuyahoga County remarked: "It is only common sense that the jury be advised of the court's decision to withdraw a previously contested issue from consideration." *McCullough, supra,* at 536, 671 N.E.2d at 310, citing 89 Ohio Jurisprudence 3d (1989) 358–359, Trial, Section 292, and *Lewistown Foundry & Machine Co. v. Hartford Stone Co.* (1915), 92 Ohio St. 76, 110 N.E. 515. Whether the trial court exercised common sense does not resolve the assigned error given that plaintiffs have failed to demonstrate prejudice as a result of the court's action.

Accordingly, I would overrule plaintiffs' fourth cross-assignment of error for the above-mentioned reasons only.

### C. Remaining Assignments of Error

I concur in the majority's rationale that Concrete is not entitled to indemnification because Concrete was actively negligent, though I disagree with the majority's discussion of contribution and proportionate awards.

As to ODOT's first assignment of error regarding deductions for collateral recovery under R.C. 2743.02(D), that section states in pertinent part: "Recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant."

While R.C. 2743.02(D) allows the state to deduct a collateral recovery from the award to a claimant, R.C. 2744.05(B), concerning damages recoverable against political subdivisions, speaks in terms of collateral "benefits." The Ohio Supreme Court has defined "benefit" under R.C. 2744.05(B) to mean " ' "financial assistance received in time of sickness, disability, unemployment, etc. either from insurance or public programs such as social security." ' " *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 264, 652 N.E.2d 952, 957, quoting *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 98, 566 N.E.2d 154, 161, and Black's Law Dictionary (6 Ed.1990) 158. ODOT has proffered no reason why the General Assembly's allowance of a deduction for collateral source benefits by political subdivisions should be treated more narrowly than the allowance for such a deduction by the state. A judgment against a joint or concurrent tortfeasor is not a benefit under the analogous *Vogel* interpretation and is properly considered in the context of contribution and indemnification. Cf. *State ex rel. Wallace v. Tyack* (1984), 13 Ohio St.3d 4, 5, 13 OBR 379, 380, 469 N.E.2d 844, 846; *State ex rel. Brown v. Shoemaker* (1988), 38 Ohio St.3d 344, 345, 528 N.E.2d 188, 189–190 (judgment is "not necessarily a collateral source of recovery for damages alleged to be caused by [the state]").

Indeed, even under the literal language of R.C. 2743.02(D), until the plaintiffs satisfy one of the two judgments, both defendants are liable for the full amount. In this context, a pending, enforceable judgment is not a recovery until that judgment is executed against a defendant. At that time, the principles already mentioned regarding prohibitions against double recovery obviate the need for a broad application of the collateral recovery rule. Accordingly, I would overrule ODOT's first assignment of error.

### D. Conclusion

For the foregoing reasons, I would affirm in part and reverse in part the judgment of the Court of Claims in case No. 98AP–141 and remand for consider-

ation of total damages incurred by plaintiffs and plaintiffs' decedents, in accordance with this opinion's disposition of plaintiffs' first cross-assignment of error in the Concrete case.

I would also reverse the judgment in case No. 98AP–180 and remand that case to the trial court for a new trial, solely on the issue of damages, due to the error in instructions on damages regarding the survivorship claim. At that time, the trial court would be required to instruct the jury to find the total damages plaintiffs sustained as a result of the incident at issue. With that instruction, the trial court would have properly derived two awards for total damages: one from the jury and its own from the case against ODOT.

Assuming ODOT and Concrete would have raised issues of contribution and apportionment, the trial court, if it determined that the harm was apportionable, would then determine the proportionate liability of the defendants. Because ODOT cannot be bound by the jury's award of damages, Concrete would still be solely liable for damages the jury awarded to the extent they exceeded the trial court's total award in the ODOT case.