**STEINKE, Appellant,**

v.

**KOCH FUELS, INC., Appellee.**

[Cite as *Steinke v. Koch Fuels, Inc.* (1992), 78 Ohio App.3d 791.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–17.

Decided July 28, 1992.

McCarthy, Palmer, Volkema & Becker, *William C. Becker* and *Eleanor Speelman,* for appellant.

*Rick E. Bailey,* for appellee.

McCormac, Judge.

Plaintiff-appellant, Albin P. Steinke, individually and as administrator of the estate of David L. Steinke, deceased, appeals from a jury verdict entered in favor of defendant-appellee, Koch Fuels, Inc., and raises the following assignments of error:

"I. The trial court erred in failing to tell the jury that they were not to consider Dave Steinke's negligence.

"II. The trial court erred as a matter of law by allowing defendant to produce evidence of intervening and superceding [*sic* ] causation and instructing the jury on the same.

"III. The trial court erred in failing to give the interrogatories asking the jury to assess the percentage of responsibility of defendant manufacturer and separately assess the percentage of responsibility of the purchaser (ODOT) to provide an adequate warning in this case.

"IV. The jury's verdict in this case was against the manifest weight of the evidence.

"V. The trial court erred in not grant [*sic*] plaintiff's motion for judgment notwithstanding the verdict or in the alternative, motion for new trial."

David Steinke, an employee of the Ohio Department of Transportation ("ODOT"), was killed while welding a safety cage around the ladder of a storage tank at ODOT's Wapakoneta facility. The tank contained a cut-back asphalt emulsion product used by ODOT as a roadway crack filler. This product, known as CBAE–350, was manufactured by Koch to specifications provided by ODOT and contained a combustible solvent, naphtha. At the time, the tank was approximately half full, thereby facilitating buildup of combustible naphtha vapors which escaped out the tank's vent hole. Apparently, sparks or hot metal pieces, produced as Steinke welded, ignited vapors, causing the tank to explode and resulting in Steinke's death.

ODOT was Koch's only customer for CBAE–350. Once produced, the product was stored at Koch's Columbus facility and, as it was needed by ODOT, would be shipped by common carrier in six-thousand-gallon bulk tank trucks. A bill of lading would accompany each delivery with the word "COMBUSTIBLE" stamped on each copy in red letters. Discharging the product into ODOT's storage tank was entrusted to the common carrier and, therefore, no one from Koch actually inspected ODOT's tanks. The evidence indicated that there were no warning signs on the tank which exploded indicating that it contained a combustible mixture. However, both Koch's tanks and the tanker truck were marked in such a fashion. In addition to the red stamp on the invoice, Koch did conduct safety seminars at ODOT's facilities in Sidney and Marietta.

Appellant instituted this action in the Franklin County Court of Common Pleas for damages based on negligence and strict liability predicated on Koch's failure to warn. On the day of trial, appellant dismissed his negligence claims and the action proceeded solely on the basis of strict liability. At the close of the evidence, the matter was submitted to the jury who returned a verdict in favor of Koch.

The primary issue presented by this appeal is contained in appellant's fourth and fifth assignments of error. The question is the extent of the duty to warn owed by a bulk supplier of a hazardous substance and whether Koch (the bulk supplier) complied with that duty. A pertinent part of that question is whether the bulk supplier has complied with its duty to warn when it permits its product to be discharged into tanks that do not contain warning labels.

In *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177, the Supreme Court of Ohio held that a strict liability action may be grounded in a failure to adequately warn. In so holding, the court stated that the duty to warn in a strict liability action is the "same as that imposed in a negligence claim based upon inadequate warning." *Id.* at paragraph three of the syllabus.

The standard to be applied when evaluating the adequacy of warnings given is contained in Restatement of the Law 2d, Torts (1965) 300, Section 388. *Id.* at 256, 556 N.E.2d at 118[1]. Section 388 of the Restatement provides:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

■ Our evaluation of the facts of this action in light of the applicable standard leads us to the conclusion that Koch did not, as a matter of law, adequately discharge its duty to warn; hence, the judgment of the trial court must be reversed.

CBAE–350 is a dangerous substance because of the highly combustible nature of naphtha, the cut-back agent used in its production. Koch was well aware of this as evidenced by its use of warning labels at its facilities, by stamping the word "COMBUSTIBLE" on its bills of lading and by its action in conducting a safety seminar, albeit at the urging of ODOT. It is not disputed that the asphalt product was dangerous when used for its intended purpose and, therefore, the first requirement of Section 388 of the Restatement is met.

Subsection (b) concerns the knowledge of actual and foreseeable users of the dangerous propensities of the product. CBAE–350 was produced according to ODOT's specifications and Koch could anticipate that ODOT's engineers would be aware of the highly flammable nature of the product, but Section 388 imposes warning requirements specifically applicable to the persons who could reasonably be expected to use the product, that is, the actual laborers who would apply the product and maintain the equipment necessary to store and use the product. See Section 388, Comment *a*. There is no evidence in

the record indicating that these persons, including the decedent, were ever warned of the volatile nature of CBAE–350. Furthermore, as addressed by Comment *k*, there was no way that the casual observer could assess the danger. The naphtha was incorporated into the emulsion and, therefore, could not be observed or noticed by a non-expert in cut-back emulsions. Furthermore, the practices of ODOT employees tended to highlight their lack of awareness. The product was heated prior to its use in tanks towed behind ODOT vehicles. The welding operation that resulted in the Wapakoneta explosion had been previously performed at three different sites. ODOT employees routinely exposed the product to open flame and intense heat, apparently unaware of the hazards commensurate with these activities.

Last, and most critical to this action, is the third requirement of Section 388: did Koch exercise reasonable care in warning anticipated users? Comment *g* to Section 388 reasons that, if the manufacturer exercises "reasonable care to give to those who are to use the chattel the information which the supplier possesses, and which he should realize to be necessary to make its use safe for them," then the manufacturer has discharged its duty to warn. See *Freas v. Prater Constr. Corp., Inc.* (1991), 60 Ohio St.3d 6, 573 N.E.2d 27. Koch argues that it discharged its duty to warn by educating the decedent's employer, relying upon, as some courts have termed it, the "knowledgeable purchaser" doctrine. See *Smith v. Walter C. Best, Inc.* (C.A.3, 1990), 927 F.2d 736.

In addressing the "knowledgeable purchaser" doctrine, the court in *Smith*, after analyzing Comment *n* to Section 388, advanced six factors that must be considered when shifting liability for failure to warn to the employer. As phrased by the *Smith* court at 739–740, they include:

" * * * (1) [T]he dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given; (4) the reliability of the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved; and (6) the burdens imposed on the supplier by requiring that he directly warn all users."

The Comment implies that a balancing test must be conducted in light of the reliability of the employer imparting necessary information to its employees. See *Goodbar v. Whitehead Bros.* (W.D.Va.1984), 591 F.Supp. 552. As previously discussed, Koch was aware that CBAE–350 was an inherently dangerous product for the purpose for which it was to be used. Furthermore, it is undisputed that Koch did warn some ODOT personnel in some fashion. A seminar was held and a caution was stamped on the bills of lading. However, the bills of lading would not have been seen by the people who actually dealt

with the product and it would appear from the record that the safety seminar was inadequate.

There was conflicting testimony at trial as to the exact purpose of the seminar put on, in part, by Koch's sales representative. His testimony indicates that his talk concerning safety may have only been part of a larger seminar about proper application in general. Additionally, the seminar was not conducted in every ODOT district, nor was the material presented to every ODOT employee who was ultimately responsible for the storage and use of CBAE–350. In sum, it would appear that the form of the warnings given were marginal at best.

A balancing of the magnitude of the risk against the burden on the supplier leads us to the conclusion that Koch was unreasonable in relying on ODOT as an information conduit in light of what Koch knew or should have known. The magnitude of the risk is obvious: a tank containing approximately six thousand gallons of highly flammable liquid and without warnings thereon ignited and exploded, while exposed to a welder's torch by a worker who was carrying out a duty assigned to him.

Koch, at a minimum, should have instructed its carrier not to discharge his load into an unmarked storage tank. Koch had shipped approximately thirty thousand gallons of its product to the Wapakoneta facility over a two-and-one-half-year period. Koch's delivery agent had various opportunities to observe the tank with its absence of warnings and obviously knew that the flammable liquid was being transferred to an improper container. Additionally, Koch's sales representative had been at many of the storage facilities, including Wapakoneta, and could have easily inspected the storage tanks. In light of this knowledge, Koch acted unreasonably in relying, if it did, upon warnings to ODOT superiors or on the warning on the bills of lading. It was obvious that the warnings were not where they should be, on the tank itself. We are not suggesting that Koch had to place the warnings on ODOT's tanks. All that was required of Koch was that it not discharge its material into an unmarked tank. Its delivery agents could easily have carried adequate warning signs with them and, if they came upon a tank that was unmarked, instruct the superintendent of the facility that the material would not be discharged into an improper container unless and until adequate warning signs were affixed.

An analogous situation exists under the Federal Hazardous Substance Act, Section 1261 *et seq.*, Title 15, U.S.Code. A retail distributor of gasoline may be civilly liable if it permits a customer to dispense gasoline into an unmarked container. See Section 1261(p)(1), Title 15, U.S.Code, and Section 1500.83, Title 15, C.F.R. The retailer is not required to affix a warning label or to go

onto the property of the purchaser to discharge its duty; it simply may not allow the customer to dispense gasoline into anything but marked containers. A similar situation exists under Ohio law. See R.C. 3741.14 and Ohio Adm.Code 1301:7-7-28. While the present case deals with a bulk industrial sale and not a retail consumer sale, the risk sought to be avoided and the minimal burden imposed are the same. ODOT would still be required to mark its storage tanks if it wanted to use them to store the highly flammable material and Koch would be liable for dispensing the liquid into an unmarked tank.

Thus, as a matter of law, reasonable minds could come to but one conclusion, which is that Koch failed to discharge its duty to warn; therefore, the jury's verdict was against the manifest weight of the evidence and contrary to law. The trial court erred in failing to set aside the defense verdict and to order a new trial.

Appellant's fourth and fifth assignments of error are sustained.

In light of our holding on appellant's fourth and fifth assignments of error, appellant's first three assignments of error are rendered largely irrelevant. However, we will address them as presented.

■ By his first assignment of error, appellant argues that the trial court erred by failing to instruct the jury that they were not to consider the negligence of Steinke.

Prior to trial, appellant dismissed his negligence count thereby removing that issue from the action. To instruct the jury not to regard something that was not at issue would have been potentially confusing and legally incorrect. The trial court did not err.

Appellant's first assignment of error is overruled.

■ Appellant next argues, in his second assignment of error, that the trial court should not have instructed the jury on intervening and superseding causation. Regardless of our views on the propriety of this instruction, it cannot amount to reversible error since it was appellant who requested the instruction at trial. It is axiomatic that a party must enter an appropriate objection at trial to preserve an issue for appeal. By requesting the very instruction that appellant now finds objectionable, he has waived any right to pursue it in this court. See Civ.R. 51(A).

Appellant's second assignment of error is overruled.

■ Lastly, appellant cites as error the trial court's failure to submit appellant's proffered jury interrogatories addressed to the issue of percentage of fault between Koch and ODOT. Civ.R. 49 requires the trial court to submit

proposed interrogatories to the jury so long as they are directed to a determinative issue, are not ambiguous or are not otherwise legally objectionable. See *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135; *West v. Vajdi* (1987), 39 Ohio App.3d 60, 528 N.E.2d 1289.

The interrogatories suggested by appellant were properly excluded by the trial court, since they were addressed to the issue of comparative fault which had no application to this strict liability action. Furthermore, the potential for jury confusion was high because of the character of the interrogatories.

Appellant's third assignment of error is overruled.

Appellant's first, second and third assignments of error are overruled. Appellant's fourth and fifth assignments of error are sustained, and the judgment of the trial court is reversed. This cause is remanded to the trial court with instructions to grant a new trial on the issue of damages, liability having been established as a matter of law.

*Judgment reversed*
*and cause remanded with instructions.*

JOHN C. YOUNG, P.J., and PEGGY BRYANT, J., concur.