OPINION
Plaintiff-appellant Ruth Roberts appeals the decision of the Jefferson County Common Pleas Court which granted summary judgment in. favor of defendant-appellee George V. Hamilton, Inc. For the following reasons, summary judgment is reversed and the case is remanded for further proceedings.
 STATEMENT OF FACTS
In 1994, John Roberts was diagnosed with malignant mesothelioma and died as a result thereof. In 1996, appellant, who was decedent's wife, filed a wrongful death action as executor and in her own right against various companies that allegedly provided asbestos-containing products to decedent's long-time employer wheeling-Pittsburgh Steel Corporation. Hamilton was a distributor of asbestos-containing insulation. Relevant to this appeal, appellant alleged that Hamilton negligently failed to warn decedent about the health risks associated with asbestos.[1]
Hamilton moved for summary judgment. In October 1998, the trial court granted summary judgment to Hamilton on the authority of R.C. 2307.08.[2] The court appears to have focused on its finding that Hamilton never exercised control over the products supplied because the products were delivered to Wheeling-Pitt by and from the manufacturer.
Timely notice of appeal followed. Appellant's sole assignment of error alleges that the trial court erred when it granted Hamilton's motion for summary judgment because there were genuine issues of material fact regarding whether Hamilton negligently failed to warn about the dangers of asbestos. Hamilton responds with three arguments on why summary judgment was proper. These arguments are addressed individually infra.
 SUMMARY JUDGMENT STANDARD
This court reviews the grant of summary judgment de novo,
without deference to the trial court. We thus peruse the evidence referenced by the parties to determine whether the required burdens have been met. Summary judgment in an asbestos case is available in the same circumstances as any other case. Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679.
In seeking summary judgment pursuant to Civ.R. 56, the movant has the initial burden to point out the parts of the record that demonstrate that there are no genuine issues of material fact concerning the elements of the nonmovant's case. Dresher v. Burt
(1996), 73 Ohio St.3d 280, 292-293. If the movant fails to meet this burden, then summary judgment must be denied. Id. If the movant meets this burden, then the nonmovant has the reciprocal burden to show that there is a genuine issue of material fact that must be addressed at trial. Id.
Summary judgments are awarded with caution after resolving all doubts and construing the evidence in favor of the nonmovant.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360. As such, summary judgment shall not be granted unless reasonable minds could only find for the movant. Civ.R. 56 (C).
 RELIANCE ON MANUFACTURER TO ISSUE WARNING
Hamilton contends that summary judgment was proper since it is not responsible for warning the officers or employees of Wheeling-Pitt about the dangers of asbestos. Hamilton argues that it reasonably relied on the manufacturer to place warnings on the insulation or the boxes which contained the insulation.
Pursuant to R.C. 2307.78 (A) (1), a supplier is liable on a products liability claim if the claimant establishes by a preponderance of the evidence that the supplier was negligent and that this negligence was a proximate cause of the claimant's injury. This negligence can take the form of the lack of a proper warning accompanying a latently dangerous product. Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 325. Thus, a supplier may be held liable under the theory of negligent failure to warn even though he did not manufacture the product. Id. Accordingly, Hamilton's initial argument that it was entitled to rely on the manufacturer to label the products with warnings is without merit.
In order to hold a defendant liable for negligent failure to warn, the plaintiff must show that there was a duty to warn, that the duty was breached and that an injury proximately resulted.Freas v. Prater Constr. Corp., Inc. (1991), 60 Ohio St.3d 6, 8-9. According to the Restatement of the Law 2d, Torts (1965), Section 388:
 "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:
 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."
Jackson v. Alert Fire and Safety Equip., Inc. (1991), 58 Ohio St.3d 48,53; Crislip v. TCH Liquidating Co. (1990), 52 Ohio St.3d 251,256-257 (stating that Ohio uses this restatement section).
Hamilton does not expressly dispute that these elements exist but instead offers excuses for its failure to warn the product users. For instance, Hamilton relies on Hargis v. Doe (1981),3 Ohio App.3d 36, where the Second Appellate District held that the requirement of an adequate warning extends only to those to whom the distributor has reasonable access. Id. at 38 (holding that the failure to place warning labels on drums of solvent did not make the supplier liable to an injured employee who never saw the drums in the first place). Unlike Hargis, appellant did regularly view the boxes containing asbestos and thus a warning on the boxes would have been notice to appellant of the dangers. SeeVercellotti v. YMCA of Greater Toledo (May 8, 1992), Lucas App. No. L-91-121, unreported at 7-8 (stating that reasonable minds could find that had suppliers placed warnings on canisters of chlorine, plaintiff may have been warned of danger).
Hamilton claims that it did not have reasonable access to the employees of Wheeling-Pitt because it never exercised control over the boxes of insulation. Hamilton alleges that all insulation was drop-shipped to Wheeling-Pitt directly from the manufacturer, and therefore Hamilton had no opportunity to cure the manufacturer's failure to place a warning on the boxes of insulation. In support of this argument, Hamilton points to invoices which show that insulation was transported in such a manner. (Attached to appellants' supplemental response are a multitude of invoices from the fifties and sixties showing shipment directly from the manufacturer).
Conversely, appellant contends that the invoices showing delivery from the manufacturer do not demonstrate that all shipments were delivered in such a manner. Testimony established that Hamilton had been supplying Wheeling-Pitt with insulation for many years. A long-time Hamilton employee who worked in the contract department stated that Hamilton had always kept approximately ten railroad carloads of insulation boxes at their warehouse. (Depo. of Albert Demjan 106, 114). Decedent's coworker testified that products supplied by Hamilton were sometimes delivered by a commercial truck and. sometimes delivered from a small truck with Hamilton's logo on it. (Depo. of Joseph DiMeo 49, 56). It thus appears that there is a conflict in the evidence on a factual matter of how the products reached Wheeling-Pitt. Moreover, appellant contends that the insulation that was drop-shipped to Wheeling-Pitt was for use by Hamilton's contract unit employees at the plant.
Even assuming all products were shipped directly from the manufacturer, appellant argues that the choice of distribution method should not free the supplier from liability for failure to warn. Appellant states that there existed other methods of warning besides placing a label on the boxes of insulation, pointing to evidence that Hamilton salesmen often toured the steel mill and advised on product use. (Depo. of DiMeo 46-47). Appellant urges this court to hold that the question of whether Hamilton had reasonable access to the users is one for the jury. After construing the evidence in the light most favorable to the nonmovant, we must come to the conclusion that the issue of Hamilton's access to the users is a questions of fact from which reasonable minds can reach different conclusions.
 GENERAL RELIANCE ON EMPLOYER/PURCHASER TO WARN USER/EMPLOYEES
It is undisputed that Hamilton did not attempt to warn appellant or other users of the insulation that asbestos can be dangerous. However, the issue here is whether Hamilton had a duty to warn the users or whether Hamilton could rely on Wheeling-Pitt as an intermediary to warn the users.
The Supreme Court has held that the duty to warn users about the dangers of certain products can be satisfied by providing an adequate warning to a learned intermediary. Seley v. G.D. Searle Co. (1981), 67 Ohio St.2d 192, 202-203. For example, a drug manufacturer who adequately warns a physician is not required to also warn the consumer. Id. See, also, Adams v. Union CarbideCorp. (C.A.6, 1984), 737 F.2d 1453, where Ohio law was interpreted to permit bulk-supplier Union Carbide to rely on General Motors to relay the issued warning to the employees. It should be noted that it has been held that the negligence of an employer in failing to warn its employees about a dangerous product of which the employer has been warned does not relieve the supplier of its duty to warn.Hargis, 3 Ohio App.3d at 37. The learned intermediary scenario may only apply to drug manufacturers because of the relationship between the physician and the patient combined with the fact that drugs are supplied bulk without containers. See Tracy,58 Ohio St.3d at 150 (emphasizing the doctor-patient relationship as the rationale behind the learned intermediary theory).
Regardless, reliance on the purchaser to warn requires a warning to have been issued to the purchaser before the reliance can be considered reasonable. See Tracy v. Merrell DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 149-150. Hence, Hamilton contends that it instructed Wheeling-Pitt how to take precautions with the product, citing to Mr. Hayes' deposition at 85-87. However, upon reading this excerpt, it is not evident that Wheeling-Pitt was warned of the dangers associated with asbestos exposure. Thus, there is a genuine issue of material fact as to whether Wheeling-Pitt was ever warned by Hamilton. Even if such a warning occurred, the issue remains whether Hamilton's reliance on Wheeling-Pitt to relay the warning was reasonable, the factors for which will be discussed infra.
 RELIANCE ON EMPLOYER TO WARN AS A SOPHISTICATED PURCHASER
Hamilton also sets forth the sophisticated purchaser defense, alleging that it had reason to believe that Wheeling-Pitt knew of any dangers associated with asbestos and thus it was not required to warn Wheeling-Pitt. The sophisticated or knowledgeable purchaser defense is invoked in cases involving suppliers of dangerous products to industrial companies. (The sophisticated user aspect of the defense is not invoked here, as it does not appear to be disputed that the actual users were unaware of the dangers of asbestos exposure).
In support of its position, Hamilton cites Smith v. Walter C.Best, Inc. (C.A. 3, 1990), 927 F.2d 736, 739, where there was an attempt to interpret Ohio law. In Smith, silica dust from sand allegedly caused plaintiff to contract silicosis. Thus, plaintiff sued the company that supplied the sand to plaintiff's employer for failing to warn of the dangers associated with silica dust inhalation. Summary judgment was granted to the supplier, and the Third Circuit affirmed stating, "sellers act reasonably if they do not warn intermediate purchasers of dangers of which the intermediate purchasers are already knowledgeable." Id. at 739.
This case can be distinguished because the sand in Smith was delivered in bulk and thus a warning label was not possible. In the case at bar, insulation was delivered in boxes which could easily be labeled. Furthermore, the Supreme Court of Ohio has not addressed the sophisticated purchaser defense and its applications in cases such as this. Moreover, it appears that whether a supplier is relieved of liability for failure to warn where the purchaser is sophisticated depends on various factors which we will discuss below.
 REASONABLE RELIANCE ON PURCHASER
Although Section 388 imposes a duty on the supplier to warn the user, Comment n suggests that the supplier may rely on the purchaser to warn the user in certain circumstances. A balancing test is set forth which states that the chance and magnitude of the risk must be weighed against the burden imposed on the supplier to warn the users. Specifically, the Smith court analyzed Comment n as requiring the trier of fact to consider the following factors: the dangers associated with the product, the purpose of the product, the form of warning given if any, the reliability of the purchaser as a conduit, the magnitude of the risk, and the burden imposed on the supplier if it must warn all of the users. Id. at 739-740.
In considering these factors in the light most favorable to appellant, it does not appear that reasonable minds could only conclude that the balance weighs in favor of Hamilton. Long-term, unprotected exposure to asbestos dust is dangerous and can result in early death. It is argued that no warning was issued by Hamilton to Wheeling-Pitt. Even if Hamilton did warn Wheeling-Pitt, Hamilton could have noticed, as it regularly toured the plant, that Wheeling-Pitt was not implementing plans for asbestos protection and thus was not a reliable conduit of information. Furthermore, the burden on Hamilton to attempt to warn the users was not so obviously impracticable that summary judgment must be rendered as a matter or law.
We prefer to liken the case at hand to Adkins v. GAF Corp.
(C.A. 6, 1991), 923 F.2d 1225. In Adkins, asbestos was supplied to a plant in bags. No warning was provided to the plant or to the plant's employees. Id. at 1228. After being sued by a plant employee for failure to warn, the supplier argued that the plant was a sophisticated purchaser upon which the supplier could rely to warn the employees. The court stated that the question of whether reliance on the plant was reasonable involves a fact-specific evaluation. The court emphasized that the bags of asbestos were ideal spots for warning labels. The court also pointed out that the supplier's sales personnel were familiar with the plant's operations and thus were aware of the plant's procedures, or lack thereof, for handling asbestos. Any negligence of the plant for failing to warn its employees was held to be foreseeable by the supplier. Id. at 1231. See, also, Steinke v.Koch Fuels, Inc. (1992), 78 Ohio App.3d 791 where the Tenth Appellate District viewed the aforementioned factors and reversed summary judgment stating that the defendant bulk fuel supplier did not reasonably rely on ODOT as a knowledgeable purchaser to warn its employees of the dangers of explosions.
For all of the foregoing reasons, summary judgment was improvidently granted. Accordingly, the trial court's judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this court's opinion and according to law.
Donofrio, J., concurs, Waite, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Appellant also pled a strict liability cause of action; however, appellant does not appeal the grant of summary judgment as to the strict liability claim.
[2] The summary judgment became a final appealable order in May 1999 when the trial court added Civ.R. 54 (B) language.